350 Ga. 869
FINAL COPY

S19A0419. DAVIS v. THE STATE.

Boggs, Justice.

Appellant Tyrone Lamark Davis ("Appellant") challenges his convictions for felony murder and a firearm offense in connection with the shooting death of Keith Moses. He contends that the evidence was legally insufficient to support his convictions; that the trial court erred in denying his pretrial motion to suppress his custodial statement to the police; that the trial court erred in denying his motion to prevent a document reflecting a co-defendant's sentence from going out with the jury during deliberations; and that he was denied the effective assistance of counsel at trial. We affirm.[1]

---

[1] The shooting occurred in the early evening of August 2, 2012. On October 23, 2012, a Houston County grand jury indicted Appellant, Bobby Jermel Releford, and Mart'e Vesean Polk for malice murder, felony murder, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a crime. The cases were severed for trial. On August 14, 2014, Releford pled guilty to felony murder and was sentenced to serve life in

1. Viewed in the light most favorable to the verdicts, the evidence at trial showed the following. On August 2, 2012, Bobby Releford met up with Mart'e Polk at the home of Polk's ex-girlfriend in Warner Robins. Releford and Polk decided to buy drugs from Keith Moses, Releford's drug dealer, and Polk drove them to Moses' house in his white, four-door car. On the way, they picked up Appellant and Hubert Hillery. Releford was armed with a .380 pistol, and Appellant was armed with a nine-millimeter pistol that Releford sold him two months earlier.

When Polk pulled into the driveway at Moses' house, Releford got out of the car and went inside. After a minute or two, Releford

prison with the possibility of parole, and on August 18, 2014, Polk pled guilty to a reduced charge and was sentenced to serve twelve years in prison with the first seven years in confinement and the rest on probation. Both Releford and Polk agreed to testify against Appellant. At a trial from August 18 to 21, 2014, the jury acquitted Appellant of malice murder but found him guilty of the other charges. On August 25, 2014, the trial court sentenced Appellant as a recidivist to serve life in prison without the possibility of parole for felony murder and a consecutive term of five years for the firearm charge; the aggravated assault verdict merged. On September 17, 2014, Appellant filed a motion for new trial, which he amended with new counsel on May 12, 2017. After a hearing, the trial court denied the motion on August 18, 2017. On September 24, 2018, the trial court granted Appellant's motion for out-of-time appeal, and he filed a timely notice of appeal two days later. The case was docketed in this Court for the term beginning in December 2018 and submitted for decision on the briefs.

came back and spoke with Appellant, who had gotten out of the car. Polk overheard Releford say to Appellant, "We've got to get this dude." Releford then told Polk, "Hold on, I'll be back out," and Appellant and Releford went inside the house.

Inside, Appellant and Releford tried to negotiate a drug deal with Moses, but Moses said that he did not have the quantity of drugs that they wanted and told them to come back later. Appellant and Releford got ready to leave, and as Releford was standing at the front door, he heard Moses say, "Oh, sh*t." Releford turned around and saw Appellant, who was behind him, pointing his gun at Moses. Appellant hit Moses in the head with the gun, and Moses fell back onto a sofa by the front door. Appellant told Moses, "You know what it is," and took a wallet and a .380 pistol from Moses. Moses then rushed Appellant, knocking him into Releford, and the three of them fell through the front door outside. The fight continued, and Appellant shot Moses once in the chest. Moses then jumped up and ran to a neighbor's house, where he banged on the door. When the door opened, he collapsed in the entryway. Moses told the neighbor's

brother, who was there, that he had been shot and needed help, and the neighbor's brother called 911. Moses also told the neighbor's brother that he knew who shot him and that the shooter lived in the area.

Meanwhile, Polk, who had gotten tired of waiting for Appellant and Releford, pulled out of the driveway and drove to the stop sign at the end of the street, but he turned around when Hillery reminded him that Releford had not yet given Polk gas money as promised. As Polk drove back toward Moses' house, he heard a gunshot, saw Moses running to the neighbor's house with blood on the front of his shirt, and watched as Releford pulled his gun and fired a single shot at Moses but missed.

Appellant and Releford ran to Polk's car and jumped inside. Releford started yelling at Appellant, asking why he shot Moses. Appellant said that he shot Moses because Moses rushed him and grabbed his collar. Appellant still had Moses' gun but had dropped Moses' wallet in the front yard during the fight. Appellant and Releford also had marijuana and cocaine that they took from Moses.

Moses was taken to the hospital but died the next morning from the gunshot wound to his chest.

The police recovered one nine-millimeter shell casing and one .380 shell casing near the front door to Moses' house and found Moses' wallet in the front yard. The police lifted a fingerprint from the inside doorknob of Moses' front door, which an expert in fingerprint analysis matched to a known print from Appellant. The police executed a search warrant at the home of Appellant's mother and found an empty box of nine-millimeter ammunition in a closet where Appellant's mother said Appellant used to keep his things.

Appellant contends that the evidence presented at trial was legally insufficient to support his convictions, because the evidence was vague, ambiguous, and conflicting as to what specific involvement he had in the shooting and how the shooting actually occurred. However, "[i]t was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." *Brown v. State*, 302 Ga. 454, 456 (807 SE2d 369) (2017) (citation and punctuation omitted). When viewed in the light most

favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). Accordingly, we reject Appellant's challenge to the sufficiency of the evidence. See *Battle v. State*, 298 Ga. 661, 663 (784 SE2d 381) (2016) (rejecting claim that "vague, ambiguous, and conflicting" evidence was legally insufficient to support convictions for murder and other crimes).

2. Appellant asserts that the trial court erred in denying his pretrial motion to suppress his custodial statement to the police. But the State did not introduce Appellant's statement at trial, so this claim is moot. See *Rai v. State*, 297 Ga. 472, 476 n.2 (775 SE2d 129) (2015); *Miller v. State*, 295 Ga. 769, 777 (764 SE2d 135) (2014).

3. Appellant argues that the trial court erred in denying his motion to prevent a copy of the indictment showing Releford's change of plea from "Not Guilty" to "Guilty" on the felony murder charge and sentence of "parolable life" from going out with the jury

during deliberations. Regardless of whether the indictment should have been redacted to remove this information before the trial court sent it out with the jury, Appellant has failed to show harm, because Releford testified to the same facts without objection on both direct and cross-examination. See *Wilkins v. State*, 291 Ga. 483, 488 (731 SE2d 346) (2012) (holding that it was highly probable that allowing summary of cellular telephone records to go out with jury during deliberations did not contribute to verdict where underlying records were admitted into evidence by stipulation).

4. Appellant claims that he received ineffective assistance of trial counsel in several respects. To prevail on this claim, Appellant must prove both that his attorney's performance was professionally deficient and that the deficiency resulted in prejudice to his case. See *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To establish deficient performance, Appellant must show that his counsel's acts or omissions were objectively unreasonable, considering all the circumstances at the time and in the light of prevailing professional norms. See *id.* at 687-690. To

establish prejudice, Appellant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reviewing court need not "address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697. "This burden, though not impossible to carry, is a heavy one." *Arnold v. State*, 292 Ga. 268, 270 (737 SE2d 98) (2013). Appellant has not carried his burden in this case.

Appellant points first to his trial counsel's alleged failure to object at a pretrial hearing held pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964), to Detective Wright's "vague recollection" and "statements said" and to his trial counsel's allegedly giving the jury an incorrect standard of proof during opening statements by telling the jury, "That's what your job to determine is, who did it and what complicity, if any, [Appellant] had." However, Appellant did not raise either of these instances at the motion for new trial stage when he had new counsel, so they are not preserved for appellate review. See *Lewis v. State*, 291 Ga. 273,

280-282 (731 SE2d 51) (2012); *Wilson v. State*, 286 Ga. 141, 143-145 (686 SE2d 104) (2009).

Appellant points next to his trial counsel's alleged failure to consult adequately with him or his family before trial. "However, 'there exists no magic amount of time which counsel must spend in actual conference with his client,' and Appellant 'does not specifically describe how additional communications with his lawyer would have enhanced his defense.'" *Blackmon v. State*, 302 Ga. 173, 175 (805 SE2d 899) (2017) (citation omitted). Thus, Appellant has not sufficiently alleged, much less met his burden to show, deficient performance by his trial counsel in this regard. See id. See also *Strickland*, 466 U. S. at 690 (requiring defendants to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment").

Finally, Appellant points to his trial counsel's alleged failure to subpoena "key witnesses that [he] wished to have present at trial." "[T]o demonstrate prejudice for the alleged failure to elicit testimony, the defendant may not rely on hearsay or speculation but

must either call the witness or introduce a legally recognized substitute for the uncalled witness's testimony." *Bell v. State*, 287 Ga. 670, 675 (697 SE2d 793) (2010) (citation and punctuation omitted). At the motion for new trial hearing, Appellant did not present any evidence about whom he wanted subpoenaed or what their testimony would have been. Thus, he failed to show the required prejudice. See id.

Judgment affirmed. All the Justices concur.

Decided May 20, 2019.

Murder. Houston Superior Court. Before Judge Lumsden.

Jonathan P. Waters, for appellant.

George H. Hartwig III, District Attorney, Daniel P. Bibler, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Sassano, Assistant Attorney General, for appellee.