306 Ga. 600
FINAL COPY

S19A0924.  WORTHEN v. THE STATE.

BOGGS, Justice.

Appellant Jacquez Laquan Worthen appeals his 2014 conviction for felony murder in connection with the shooting death of Robert Lee Parrish, Jr. He contends that the evidence was insufficient to support his conviction as a party to the shooting and that the trial court abused its discretion in admitting gang evidence over his objection. We affirm.[1]

---

[1] The shooting occurred on the evening of April 8, 2012. On September 19, 2012, an Emanuel County grand jury indicted Appellant along with three others — Jhakeem Rhashad Armstrong, Jeremy Lesean Armstrong, and Reginald Keith Young, Jr. — for malice murder, felony murder, voluntary manslaughter, aggravated assault, and four counts of possession of a firearm during the commission of a crime. Appellant and Jhakeem Armstrong were tried together from August 25 to 29, 2014. The jury found Appellant guilty of felony murder and aggravated assault but acquitted him of the other charges. (The jury found Jhakeem Armstrong guilty of malice murder, aggravated assault, and two firearm possession charges.) The trial court sentenced Appellant to serve life in prison for felony murder; the aggravated assault verdict merged. Appellant filed a timely motion for new trial, which he amended with new counsel on December 28, 2017, and January 24, 2018. After an evidentiary hearing, on January 9, 2019, the trial court denied the motion. Appellant filed a timely notice of appeal, and the case was docketed in this Court for the April 2019 term and submitted for decision on the briefs.

1. (a) Viewed in the light most favorable to the prosecution, the evidence at trial showed the following. Appellant, Jhakeem Armstrong ("Armstrong"), Armstrong's older brother Jeremy Armstrong ("Armstrong's brother"), and Reginald Young, Jr. were all members of the "Circle of Ten" sub-group of the Crips street gang. On April 5, 2012, which was the Thursday before Easter, Armstrong's brother attended a house party across the street from East Georgia State College with a man nicknamed "Big Man." Parrish's son and his friends Darshan Habersham and Jakolby Williams were students at the college and attended the same party. "Big Man" twice deliberately bumped into Parrish's son, prompting Habersham to intervene. Habersham ended up in an argument with Armstrong's brother, which escalated into a fist fight outside the house in front of other people. Habersham won the fight decisively, with Parrish's son and Williams eventually having to pull Habersham off Armstrong's brother.

On the evening of Easter Sunday, April 8, 2012, Parrish's son went to a park for a cookout with friends. Numerous people were in

the park, including Appellant, who was there with Armstrong, Armstrong's brother, and Young. At some point, Appellant approached Parrish's son and accused him of "jumping" Armstrong's brother with Habersham at the house party in an unfair two-on-one fight; Parrish's son denied the charge. Appellant said that he had "some boys coming" to the park, and "we're going to find out what really happened" at the party. Parrish's son viewed Appellant's statements as a threat and called his father for help.

Parrish rushed to the park, found his son, and told him to step aside while he discussed the problem with Appellant. Appellant said to Parrish, "[Y]o, your son jumped my homeboy," meaning Armstrong's brother. Parrish invoked his and his son's family ties with Appellant and told Appellant that he therefore should not be fighting with Parrish's son. Appellant replied that he knew they were related but that he still would fight Parrish.[2]

By that point, a crowd of 20 to 30 people had gathered around.

---

[2] It is unclear from the record exactly how Appellant is related to Parrish and Parrish's son.

3

Armstrong, who had a blue bandanna hanging out of his back pocket, twice said to Appellant, "let's just go on and do this n\*\*ger," referring to Parrish. As the argument continued and Parrish turned away, Appellant loudly asked Armstrong, "you got that heat cuz[?]" Armstrong immediately pulled out a gun and shot Parrish in the back of the head. Parrish fell to the ground, and Armstrong stood over him and shot him twice more, once in the upper chest and once in the face, killing him. Appellant and Armstrong then fled in the same direction as the crowd scattered.

Although Parrish brought his loaded nine-millimeter handgun with him to the park, he kept it holstered with the safety on. At no point did Parrish threaten to hurt anyone or point his gun at anyone.

In addition to testimony about what happened at the house party and in the park, the State presented testimony by Charles Whitaker, an expert in gang investigations. Whitaker testified that the Crips street gang has a presence in Georgia; that gangs are associated with certain colors; that the color blue is predominantly associated with the Crips; and that he has seen Crips members in

4

Georgia wearing blue bandannas, or sometimes black. He identified certain hand signs associated with the Crips, including two that Appellant and Armstrong regularly made, as well as gang-affiliated tattoos in a photograph of Armstrong. Whitaker also testified that respect is an important aspect of gang culture; that throughout the course of his long career, nine times out of ten, an incident of gang violence started "over somebody being disrespected"; that in gang culture, disrespect triggers a disproportionate response; and that disrespect "could be anything," including beating a gang member in a fight or standing up to a gang. He added that gangs have no problem reacting to perceived disrespect with violence, particularly when disrespect is shown in a public place, and that the violence functions both as payback for the disrespect and as a warning to the community of what they can expect if they cross the gang.[3]

---

[3] As noted above, the evidence, viewed in the light most favorable to the prosecution, showed that Appellant, Armstrong, Armstrong's brother, and Young were members of the same gang. Williams testified that those four were part of a group that typically hung out together; that he had seen pictures on the internet of Appellant and Armstrong making hand signs associated with the Crips street gang; that Appellant, Armstrong, Armstrong's brother, and

(b) Appellant contends that the evidence was legally insufficient to prove that he committed the aggravated assault predicate for his felony murder conviction, noting that all the testimony was that it was Armstrong, and not Appellant, who actually shot Parrish. It does not follow, however, that Appellant could not properly be found guilty as a party to felony murder based on the aggravated assault that Armstrong directly committed. See *Herrington v. State*, 300 Ga. 149, 150 (794 SE2d 145) (2016) ("[A] defendant need not personally possess a weapon or fire a shot to be found guilty as a party to an aggravated assault.").[4] As Appellant

_____

Young "wear a lot of blue and black" clothing, "but mostly blue," which is associated with the Crips; and that "[e]very day when they come out," they have blue bandannas hanging out of their back pockets. Appellant's father testified that Appellant "hung out with a lot of . . . young boys" and was "wild," and that he told the police that Appellant claimed to have an AK-47. Gina Copeland testified that she had seen Appellant and Armstrong making hand signs associated with the Crips; that for almost two years before the shooting, she saw Appellant and Armstrong wearing "[b]lack or blue" bandannas, but "[m]ostly blue," on a daily or almost daily basis; and that Armstrong used "Raymond Washington" — the founder of the Crips — as his profile name on Facebook. Photographs of Appellant and Armstrong's brother wearing blue bandannas were admitted at trial, as were photographs showing Appellant making gang signs and a photograph of gang-affiliated tattoos that Armstrong had gotten.

[4] OCGA § 16-2-20 says:

(a) Every person concerned in the commission of a crime is a

6

acknowledges, the jury could find him guilty as a party to the shooting, and thus to aggravated assault and felony murder, if the evidence showed either that he intentionally aided or abetted Armstrong in the commission of the shooting of Parrish or that he intentionally advised, encouraged, hired, counseled, or procured Armstrong to shoot Parrish. See OCGA § 16-2-20 (b) (3), (4). But Appellant asserts that the evidence was insufficient to prove that he did any of those things. We disagree.

Appellant points first to the testimony of prosecution witness Allyson Byrd. According to Appellant, Byrd "correctly summarized what happened on Easter Sunday in the park," and she testified

---

party thereto and may be charged with and convicted of commission of the crime.

(b) A person is concerned in the commission of a crime only if he:

(1) Directly commits the crime;

(2) Intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity;

(3) Intentionally aids or abets in the commission of the crime; or

(4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime.

7

that, in her opinion, Armstrong was acting independently of Appellant when he shot Parrish. But a rational jury could draw a contrary inference from other evidence presented at trial, and "it was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." *Davis v. State,* 305 Ga. 869, 871 (828 SE2d 313) (2019) (citation and punctuation omitted).

Appellant argues next that the evidence showed at most that he asked Armstrong if Armstrong was armed before Armstrong shot Parrish, which is insufficient to show that he either intentionally aided or abetted in the commission of the shooting or intentionally advised, encouraged, or counseled Armstrong to shoot Parrish. This argument overlooks the evidence recited in footnote 3 above showing that Appellant and Armstrong were members of the same gang; that the argument in the park between Appellant and Parrish's son, and the later argument between Appellant and Parrish, stemmed from an incident several days before in which a friend of Parrish's son had beaten Armstrong's brother — another member of Appellant's gang

— in a fight at a house party; that Appellant told Parrish's son in the park that he had "some boys coming," and "we're going to find out what really happened"; that a crowd gathered around Appellant and Parrish as they argued in the park; that Armstrong twice said to Appellant during that argument, "let's just go on and do this n\*\*ger," meaning Parrish; that Armstrong did not open fire on Parrish until Appellant loudly asked Armstrong, "you got that heat cuz[?]"; and that Appellant and Armstrong fled in the same direction after the shooting. Appellant's argument also ignores the testimony of the State's gang investigations expert that gangs consider standing up to them, as Parrish did, to be an act of disrespect, and that gangs have no problem reacting to disrespect with disproportionate violence, even in a public place like a crowded park.

As we have repeatedly explained, "[w]hether a person was a party to a crime can be inferred from his presence, companionship, and conduct before and after the crime was committed." *Herrington*, 300 Ga. at 150 (citation and punctuation omitted). See also *Butts v. State*, 297 Ga. 766, 770 (778 SE2d 205) (2015) (explaining that under

9

OCGA § 16-2-20, a jury may infer a common criminal intent from the defendant's presence, companionship, and conduct with another perpetrator before, during, and after the crime). A rational jury could infer from Appellant's conduct on the day of the shooting that he intentionally advised, encouraged, and counseled Armstrong to shoot Parrish. See *Simpson v. State*, 265 Ga. 665, 665-666 (461 SE2d 210) (1995). Thus, when properly viewed in the light most favorable to the prosecution, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of felony murder predicated on aggravated assault. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). Accordingly, we reject Appellant's challenge to the sufficiency of the evidence to support his felony murder conviction.

2. Appellant also contends that the trial court abused its discretion in admitting under OCGA § 24-4-404 (b) the other acts

evidence showing gang membership recited in footnote 3 above over his objection. We disagree.[5]

Other acts evidence is admissible under OCGA § 24-4-404 (b) ("Rule 404 (b)") only if: (1) the evidence is relevant to an issue in the case other than the defendant's character; (2) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice; and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the other act. See *Brewner v. State*, 302 Ga. 6, 13 (804 SE2d 94) (2017).

---

[5] OCGA § 24-4-404 (a) says that "[e]vidence of a person's character or a trait of character shall not be admissible for the purpose of proving action in conformity therewith on a particular occasion" subject to certain exceptions that are not relevant here. However, OCGA § 24-4-404 (b) then says:

> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause shown, of the general nature of any such evidence it intends to introduce at trial. Notice shall not be required when the evidence of prior crimes, wrongs, or acts is offered to prove the circumstances immediately surrounding the charged crime, motive, or prior difficulties between the accused and the alleged victim.

11

See also *Hood v. State*, 299 Ga. 95, 101-105 (786 SE2d 648) (2016) (discussing the proper application of this three-part test). We review a trial court's decision to admit other acts evidence only for abuse of discretion. See *Hood*, 299 Ga. at 100-101.

Appellant does not dispute that the third part of the Rule 404 (b) test was satisfied, i.e., that there was sufficient proof for the jury to find by a preponderance of the evidence that Appellant, Armstrong, Armstrong's brother, and Young engaged in the other acts recited in footnote 3 above showing that they were all members of the same street gang. Appellant does claim, however, under the first part of the Rule 404 (b) test, that the evidence of the other acts showing gang membership was not relevant to any issue in the case other than his character. See *Fleming v. State*, 306 Ga. 240, 247 (830 SE2d 129) (2019) ("Simply put, the evidence must be for a purpose other than to show a defendant's general propensity toward violence."). But when a defendant is on trial for murder, the motive for the homicide is a relevant fact. See *Romer v. State*, 293 Ga. 339, 341 (745 SE2d 637) (2013). Here, the other acts evidence showing

12

gang membership helped to establish a motive for Appellant to encourage Armstrong to shoot Parrish. See OCGA § 24-4-401 (broadly defining the term "relevant evidence" to mean "evidence [that has] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). See also *Anglin v. State*, 302 Ga. 333, 336-337 & n.7 (806 SE2d 573) (2017) (explaining that evidence of gang membership may be relevant to show motive in a gang-related murder case even if the defendant is not charged under the Georgia Street Gang Terrorism and Prevention Act, OCGA §§ 16-15-1 to 16-15-11).

Appellant also claims, under the second part of the Rule 404 (b) test, that the probative value of the other acts evidence showing gang membership was substantially outweighed by the danger of unfair prejudice to him. See OCGA § 24-4-403 ("Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."). As the trial court recognized, the admission of evidence showing gang membership often presents

13

a danger of unfair prejudice. But such evidence also can be highly probative of facts that are of consequence in a criminal prosecution, such as the defendant's motive for involvement in a crime. See *Kirby v. State*, 304 Ga. 472, 486 (819 SE2d 468) (2018) ("Motive is the reason that nudges the will and prods the mind to indulge the criminal intent." (citation and punctuation omitted)).

"'The probative value of evidence is a combination of its logical force to prove a point and the need at trial for evidence on that point.'" *Olds v. State*, 299 Ga. 65, 76 n.16 (786 SE2d 633) (2016) (quoting Paul S. Milich, Georgia Rules of Evidence § 6:4 (2015)). When other acts evidence is offered to prove motive, there is no requirement of overall similarity between the crimes charged and the other acts. See *Thompson v. State*, 302 Ga. 533, 540 (807 SE2d 899) (2017). To be admissible as proof of motive, however, the other acts evidence must be logically relevant to the crimes charged and necessary to prove something other than the defendant's propensity to commit the charged crimes. See id.

Here, the prosecutorial need for the other acts evidence

showing gang membership was high. The evidence against Appellant, aside from the other acts evidence, was legally sufficient to support a jury finding that Appellant was a party to the shooting, but it was far from overwhelming. In particular, without the other acts evidence, it is unclear what motive Appellant would have had to engage Parrish's son or Parrish about the incident at the house party in the first place, much less to intentionally encourage Armstrong to pull out a gun and start shooting at Parrish in a crowded park. The other acts evidence showing that Appellant, Armstrong, Armstrong's brother, and Young were fellow gang members, in combination with the expert testimony that gangs consider standing up to them to be an act of disrespect, provided evidence of Appellant's motive to encourage Armstrong to shoot Parrish. See *Jackson v. State*, 306 Ga. 69, 79 n. 10 (829 SE2d 142) (2019) (noting the existence of a genuine question as to motive — why the defendant would have shot the victim — where the defendant apparently had no personal dispute with the victim). Moreover, Appellant has not explained how the admission of the

15

other acts evidence recited in footnote 3 above created a danger of unfair prejudice in this case. "[I]n a criminal trial, inculpatory evidence is inherently prejudicial; it is only when *unfair* prejudice substantially outweighs probative value that the rule permits exclusion." *Anglin*, 302 Ga. at 337 (citation and punctuation omitted; emphasis in original).

The exclusion of relevant evidence because its probative value is substantially outweighed by the danger of unfair prejudice to the defendant is an extraordinary remedy that trial courts should grant only sparingly. See *Hood*, 299 Ga. at 102. See also id. at 103 ("The major function of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." (citation and punctuation omitted)). Here, the trial court acted within its discretion in concluding that the probative value of the other acts evidence showing gang membership was not substantially outweighed by the danger of unfair prejudice to Appellant. Accordingly, the trial court did not abuse its discretion

in admitting the evidence under Rule 404 (b) over Appellant's objection.

*Judgment affirmed. All the Justices concur.*

DECIDED AUGUST 19, 2019.
Murder. Emanuel Superior Court. Before Judge Palmer.
*David J. Walker*, for appellant.
*S. Hayward Altman, District Attorney, Courtney M. Patterson, Assistant District Attorney; Christopher M. Carr, Attorney General,*

*Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General*, for appellee.