310 Ga. 598
FINAL COPY

S20A1364. ARMSTRONG v. THE STATE.

PETERSON, Justice.

Jhakeem Armstrong appeals his conviction for malice murder for the death of Robert Parrish, Jr. ("Parrish").[1] He argues that the

---

[1] The crimes occurred on April 8, 2012. On September 19, 2012, an Emanuel County grand jury indicted Armstrong along with Jeremy Armstrong, Jacquez Worthen, and Reginald Young, Jr., for malice murder, felony murder, voluntary manslaughter, aggravated assault, and four counts of possession of a firearm during the commission of a crime. Following Armstrong and Worthen's joint trial held August 25 to 29, 2014, the jury found Armstrong guilty of malice murder, aggravated assault, and two counts of possession of a firearm during commission of a crime, but not guilty of felony murder, voluntary manslaughter, and two counts of possession of a firearm during the commission of a crime. Worthen was convicted of felony murder, and his conviction was affirmed. See *Worthen v. State*, 306 Ga. 600, 600 n.1, 604-607 (2) (832 SE2d 335) (2019). The court sentenced Armstrong to life with the possibility of parole for malice murder, a twenty-year sentence for aggravated assault to be served concurrently with the life sentence, and two five-year sentences for possession of a firearm during the commission of a crime, one to be served consecutive to the life sentence and the other to be served concurrently. Armstrong filed a motion for new trial on September 4, 2014, and amended the motion on March 15, 2019. After a hearing on the motion for new trial held March 20, 2019, the trial court issued an order on January 9, 2020, granting Armstrong's request to amend his sentence to merge the aggravated assault and firearm possession counts with the malice murder conviction but denying his motion for new trial. Because the State has not cross-appealed any sentencing errors that benefitted Armstrong, we decline to consider any sua sponte. See, e.g., *Newton v. State*, 308 Ga. 863, 863 n.1 (843 SE2d 857) (2020). Armstrong filed a motion for out-of-time appeal on March 23, 2020. The trial court granted the motion on March 26. Armstrong filed a

trial court erred by admitting evidence that he was affiliated with a gang under OCGA § 24-4-404 (b) ("Rule 404 (b)"), by permitting witness testimony regarding certain photographs on the Internet because the testimony amounted to hearsay and violated the best evidence rule and the Confrontation Clause, and by failing to give a limiting instruction regarding evidence that he was affiliated with a gang. He also argues that his trial counsel provided ineffective assistance by failing to ensure that the trial court gave the jury the limiting instruction. But evidence of Armstrong's gang affiliation was relevant to and probative of his motive for committing the crime charged and was thus admissible under Rule 404 (b). And even assuming that the trial court erred in admitting testimony regarding the Internet photos and failing to give a limiting instruction, such errors did not contribute to the verdict, and Armstrong has not shown that his trial counsel's assistance was ineffective. We affirm.

---

notice of appeal, and the case was docketed to this Court's August 2020 term and submitted for a decision on the briefs.

The evidence presented at trial showed the following.[2] Parrish's son Faizon Parrish, Jakolby Williams, and Darshan Habersham were at a park on Easter Sunday, April 8, 2012, along with 100 to 200 other people who gathered for an egg hunt and cookout. Jacquez Worthen was also at the park with Armstrong, Armstrong's brother Jeremy, and other friends. Worthen called Habersham over and accused Faizon and Habersham of "jumping" Jeremy at a party a few days earlier.[3] Faizon and Habersham denied that they jumped Jeremy, stating that it "was just a one on one fight." Worthen responded that he had some friends coming and would find out what really happened.[4] Faizon and Habersham walked away. Faizon, believing Worthen's words to be a threat and fearing for his life, called Parrish, his father.

---

[2] Because this case requires an assessment of the harm and prejudice of alleged trial court error and deficient performance by counsel, we present the evidence as jurors reasonably would have viewed it, rather than in the light most favorable to the verdicts.

[3] Worthen and Faizon apparently are related, but the precise nature of their relation is unclear from the record.

[4] Habersham testified that Faizon became upset during the conversation and Worthen responded by telling Faizon to calm down and that nobody was going to do anything.

After receiving his son's call, Parrish rushed to the park and walked rapidly toward Worthen, ignoring a neighbor's greeting. He asked Worthen who was messing with his son, reminded him that they were "kin folk," and urged him to stop fighting and try to get along. Armstrong, Jeremy, and other friends of Worthen and friends of Faizon stood nearby, and a crowd of 20 to 30 people gathered. Worthen responded, "your son jumped my homeboy," and "[y]ou're my uncle but I'll still fight ya." As they spoke, the conversation grew more heated. Parrish had a gun with him, although there is conflicting testimony as to whether he took it out of its holster or pointed it at anyone. There also is conflicting testimony about whether Parrish threatened Worthen. Some witnesses said that Parrish told Worthen, "I don't fight anymore. I will shoot you and leave you stinking," and "I'm fixing to make an example out of somebody." Other witnesses said Parrish made no threats at all.

At some point, Armstrong said twice, "Let's just go on and do this n****r."[5] Worthen asked Armstrong whether he had a gun.

---

[5] At least one witness testified that Armstrong said nothing.

Parrish pushed aside a friend who was trying to pull him away and said something to the effect that he would "die" or "kill" for his son. Armstrong then moved behind Parrish and shot him in the back of the head. Parrish fell to the ground face up, and Armstrong shot him twice more after he fell.[6] Armstrong started running; Faizon took his father's gun and charged at Armstrong, but his attempt to shoot failed because the safety was on, and he was unable to find Armstrong later. Armstrong hid his weapon under a nearby house and fled. Police apprehended him in July 2012 after an extensive search.

At Armstrong and Worthen's joint trial, Armstrong claimed that he shot Parrish in self-defense and in defense of a third party, Worthen. The State argued that Armstrong shot Parrish because Worthen, as the leader of Armstrong's gang, ordered the killing in retaliation for Parrish's public disrespect of the gang when Worthen pointedly asked Armstrong if Armstrong had a gun. The State introduced testimony by Jakolby Williams, a friend of Faizon who

---

[6] At least one witness said all the shots were fired before Parrish fell.

was present at the shooting, that he saw pictures on the Internet of Armstrong, Worthen, and their friends displaying Crips gang signs, and that he observed them wearing blue bandannas in their back pockets when in public. Armstrong's trial counsel objected that the testimony about the photos was hearsay, but the court overruled the objection. Other witnesses testified that Armstrong, Worthen, Jeremy, and their friends were "homeboys" in "the circle" that was a local sub-group of the Crips gang, used hand signs associated with the Crips gang, and regularly displayed black or blue bandannas; additionally, Armstrong had gang-related tattoos and used the name of a Crips founder as his profile name on Facebook. The State also presented the testimony of an expert in gang investigations, Charles Whitaker. Defense counsel objected to his testimony, but the court overruled the objection. As we described in Worthen's appeal,

> Whitaker testified that the Crips street gang has a presence in Georgia; that gangs are associated with certain colors; that the color blue is predominantly associated with the Crips; and that he has seen Crips members in Georgia wearing blue bandannas, or

6

sometimes black. He identified certain hand signs associated with the Crips, including two that [Worthen] and Armstrong regularly made, as well as gang-affiliated tattoos in a photograph of Armstrong. Whitaker also testified that respect is an important aspect of gang culture; that throughout the course of his long career, nine times out of ten, an incident of gang violence started "over somebody being disrespected"; that in gang culture, disrespect triggers a disproportionate response; and that disrespect "could be anything," including beating a gang member in a fight or standing up to a gang. He added that gangs have no problem reacting to perceived disrespect with violence, particularly when disrespect is shown in a public place, and that the violence functions both as payback for the disrespect and as a warning to the community of what they can expect if they cross the gang.

*Worthen v. State*, 306 Ga. 600, 601-602 (1) (a) (832 SE2d 335) (2019).

When the State sought to admit photographs as evidence of Armstrong's alleged gang activity, defense counsel objected.[7] The trial judge overruled the objection but agreed to defense counsel's request for a limiting instruction regarding evidence of Armstrong's gang affiliation, to be given at the time of the jury charge. But Armstrong's trial counsel did not later submit a written request for the limiting instruction, and when the trial court failed to give the

---

[7] The tendered photos depicted Armstrong's tattoos and showed Worthen and other friends of Armstrong displaying gang signs.

7

instruction in the jury charge, trial counsel did not raise an objection.

1. Armstrong does not challenge the sufficiency of the evidence, but we have independently reviewed the evidence presented at trial and conclude that the evidence was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that he was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).[8]

2. Armstrong argues that the trial court erred in allowing the State to introduce other acts evidence under Rule 404 (b) that purportedly demonstrated Armstrong's participation in a gang. While Armstrong is not entirely clear precisely whether all or merely just some of the gang-related evidence should not have been admitted, the evidence that the trial court admitted under Rule 404 (b) included photographs of him holding firearms and displaying

---

[8] We remind litigants that the Court will end our practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State*, 309 Ga. 385, 399 (4) (b) (846 SE2d 83) (2020). The Court began assigning cases to the December term on August 3, 2020.

gang signs; evidence that he had gang-related tattoos and regularly wore a black or blue bandanna, "mostly blue"; testimony that he displayed gang signs; testimony describing photos of him on the Internet displaying gang signs; and testimony by the State's expert in gang investigations that, among other things, explained in additional detail the gang-related nature of much of this evidence. See *Worthen*, 306 Ga. at 602 (1) (a) n.3. Even if Armstrong challenges all of this evidence, his arguments fail.

Prior to trial, Armstrong filed a motion in limine to exclude any evidence regarding his gang participation or activity as improper character evidence, irrelevant, and highly prejudicial, and to exclude certain photographs for the same reasons and on the ground that they could not be authenticated. The trial court denied Armstrong's motion at a pre-trial hearing but indicated that it would not make a definitive ruling on the issue until it arose at trial.

Under Rule 404 (b), "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith[,]" but such evidence may be

admissible for other purposes, including to prove motive. OCGA § 24-4-404 (b); *Brooks v. State*, 298 Ga. 722, 726 (783 SE2d 895) (2016). To offer evidence under Rule 404 (b), a party must show that: (1) the evidence is relevant to an issue in the case other than the defendant's character; (2) the probative value of the evidence is not substantially outweighed by its undue prejudice; and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the other act. *Kirby v. State*, 304 Ga. 472, 479 (4) (819 SE2d 468) (2018). We review the trial court's admission of other acts evidence for abuse of discretion. See id.

(a) Armstrong argues that the evidence in question was not relevant because the State never proved that the motive for the crime was related to the alleged gang membership. We disagree. "[E]vidence of motive for the homicide is always relevant in a murder trial[.]" *Romer v. State*, 293 Ga. 339, 341 (1) (b) (745 SE2d 637) (2013) (emphasis omitted). Armstrong's co-defendant Worthen raised this same issue in his appeal, and we held that evidence of his involvement in gang activity was relevant to establish the motive

10

for Parrish's murder despite the fact that Worthen was not charged with criminal gang activity. See *Worthen*, 306 Ga. at 600, 605 (2). Evidence that Armstrong, Worthen, and Jeremy were fellow gang members, "in combination with the expert testimony that gangs consider standing up to them to be an act of disrespect, provided evidence" of Armstrong's motive to shoot Parrish for standing up to a fellow gang member in a public park. Id. at 606 (2).

(b) Armstrong argues that evidence of his gang involvement was more prejudicial than probative. Under OCGA § 24-4-403 ("Rule 403"), "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Although "evidence of gang membership can be highly prejudicial[,]" all inculpatory evidence is inherently prejudicial; "it is only when *unfair* prejudice substantially outweighs probative value that the rule permits exclusion." *Anglin v. State*, 302 Ga. 333, 337 (3) (806 SE2d 573) (2017) (citation and punctuation omitted; emphasis in original). "The probative value of evidence is a combination of its logical force to prove a point and the need at trial for evidence on

11

that point." *Worthen*, 306 Ga. at 606 (2) (citation and punctuation omitted).

As we concluded in *Worthen*, here "the prosecutorial need for the other acts evidence showing gang membership was high" because, without it, it is unclear what motive Armstrong would have had to shoot Parrish in a crowded park merely because Parrish was in a dispute with Worthen. 306 Ga. at 606 (2); see also *Jackson v. State*, 306 Ga. 69, 79 (2) (b) (ii) n.10 (829 SE2d 142) (2019) (genuine question as to motive when defendant shot someone with whom he apparently had no personal dispute). And although Armstrong argues that the State failed to prove that the charged crime was motivated by Armstrong's gang membership, the State offered sufficient evidence at trial for a reasonable jury to conclude otherwise. Witnesses testified that Armstrong and Worthen were members of the same gang, that the argument between Worthen and Parrish began with Worthen accusing Parrish's son of "jumping" one of his "homeboys" who was also a member of that gang, that Armstrong only shot Parrish after Worthen asked Armstrong if he

had a gun, and that gang members are not hesitant to kill those whom they deem to be disrespecting them, such as someone who stands up to them in public. See *Anglin*, 302 Ga. at 337 (3) (evidence of gang membership was "relevant to and probative of motive" where witnesses testified that the shooter was seeking membership in a gang, the victim had previously threatened the shooter, and the gang "code" required violent responses to being threatened). Considering the high probative value of the evidence regarding Armstrong's affiliation with a gang, keeping in mind that excluding evidence under Rule 403 is "an extraordinary remedy" to be used only sparingly, and reviewing the evidence "in a light most favorable to its admission," id. (citation omitted), we conclude, as we did in *Worthen*, 306 Ga. at 604-607 (2), that the trial court did not abuse its discretion.

(c) Armstrong also argues that there is insufficient proof of his affiliation with a gang because the evidence is circumstantial and disputed. But based on the evidence presented at trial, a rational jury could have found that Armstrong was a member of a gang, and

"it was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." Worthen, 306 Ga. at 603 (1) (b) (citation and punctuation omitted). Therefore, "the trial court did not abuse its discretion in admitting the evidence under Rule 404 (b) over [Armstrong's] objection." Id. at 607 (2). [9]

3. Armstrong claims that the trial court erred when it allowed the State's witness Jakolby Williams to testify that he saw photographs on the Internet in which Armstrong allegedly displayed gang signs. His claims fail.

At trial, Williams testified that he saw pictures on the Internet of Armstrong, Worthen, and their friends displaying gang hand signs.[10] The pictures Williams referenced were not admitted into

---

[9] Evidence regarding Armstrong's alleged affiliation with a gang might also have been admissible as intrinsic evidence. Evidence is admissible as intrinsic to the crimes charged when it is "(1) an uncharged offense arising from the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense." *Fleming v. State*, 306 Ga. 240, 244 (3) (a) (830 SE2d 129) (2019) (citation and punctuation omitted). Intrinsic evidence must also satisfy the balancing test set forth in OCGA § 24-4-403. Id. at 245 (3) (a). But given our conclusion (as in *Worthen*) that admission under Rule 404 (b) was not an abuse of discretion, we need not decide this here.

[10] The portion of Williams's testimony at issue is as follows:

14

evidence. Armstrong argues that Williams's testimony regarding the photos constituted hearsay. Armstrong further claims that the testimony violated the best evidence rule[11] and denied him his right of confrontation under the Confrontation Clause.[12] Armstrong did not object at trial to Williams's testimony on grounds that it violated the best evidence rule or the Confrontation Clause, so these two claims are reviewable only as plain error. See OCGA § 24-1-103 (d)

---

Q: Have you ever seen Mr. Worthen, [Armstrong], or his friends throwing those [Crips hand] signs that you're familiar with?
A: As far as like pictures on the internet.
Q: Okay.
A: That's about it.
Q: And you've seen them yourself?
A: I haven't seen it personally in person but like —
[Defense counsel]: Objection —
A: — like I said, on the internet.

[11] The best evidence rule provides that the original photograph is required to prove the contents of a photograph. See OCGA § 24-10-1002.

[12] Armstrong also argues on appeal that the trial court's ruling allowing Williams's testimony impaired his substantive rights because it denied him the due process rights guaranteed by the federal and state Constitutions. It is unclear from his brief whether, in referring to his due process rights, Armstrong merely means to argue that the claimed error was not harmless under a plain error analysis, or whether he means to assert a constitutional violation distinct from his Confrontation Clause claim. And Armstrong makes no substantial argument that the Georgia Constitution's Due Process Clause should be interpreted differently in this respect from the federal Due Process Clause. Because we conclude that any error was harmless, we need not consider any distinct claim.

15

("Nothing in this Code section shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court.").

But we need not decide whether the testimony was hearsay or violated the best evidence rule or the Confrontation Clause, because any error was harmless. "Even an error of constitutional magnitude" may be considered harmless "if the State can prove beyond a reasonable doubt that the error did not contribute to the verdict, such as when the evidence at issue is cumulative of other properly-admitted evidence or when the evidence against the defendant is overwhelming." *Ensslin v. State*, 308 Ga. 462, 471 (2) (d) (841 SE2d 676) (2020) (citation and punctuation omitted). Specifically regarding Armstrong's hearsay claim, "the erroneous admission of hearsay is harmless where substantial, cumulative, legally admissible evidence of the same fact is introduced." *Anglin*, 302 Ga. at 336 (2); see also *Davis v. State*, 302 Ga. 576, 583-584 (4) (805 SE2d 859) (2017) (even if statement fell outside of hearsay exception, its admission was harmless, because it was merely cumulative of other

16

evidence). In this case, Williams's relatively brief testimony was cumulative of much more extensive testimony from another witness, Gina Copeland, that Armstrong and Worthen displayed gang signs over a period of nearly two years prior to the shooting. And, of course, the gang-sign evidence was only one part of the considerable body of other evidence of gang membership. In the light of all the other gang evidence, it is clear to us beyond a reasonable doubt that the admission of Williams's testimony about the photograph did not contribute to the verdicts.

4. Armstrong argues that the trial court committed plain error when it charged the jury without giving an instruction that the evidence of Armstrong's gang affiliation was admitted for the limited purpose of proving motive. We disagree.

Because Armstrong's trial counsel did not object at trial to the lack of a limiting instruction, this claim is reviewable only for plain error. See OCGA § 17-8-58 (b) (providing in part that "[f]ailure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless

such portion of the jury charge constitutes plain error which affects substantial rights of the parties"). To establish plain error, Armstrong "must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Denson v. State*, 307 Ga. 545, 547-548 (2) (837 SE2d 261) (2019) (citation and punctuation omitted). To show that his substantial rights were affected, Armstrong must make an "affirmative showing that the error probably did affect the outcome below." *McKinney v. State*, 307 Ga. 129, 135 (2) (b) (834 SE2d 741) (2019) (citation and punctuation omitted). If Armstrong fails to meet any one of the elements of the plain error test, his claim fails. See *Denson*, 307 Ga. at 548 (2).

Even assuming that the trial court's failure to give a limiting instruction was clear error, Armstrong cannot establish that the error affected his substantial rights because he has not shown that the error probably affected the outcome of his trial. Armstrong

18

makes only conclusory arguments about harm. Throughout his brief, he acknowledges that the gang evidence "featured prominently in" and "was naturally a major component of" the State's theory of the case. The record bears this out; as described above, the State's theory was that gang membership motivated Armstrong's actions. The State relied heavily on this theory in both opening and closing arguments. The challenge for Armstrong's argument is that the limiting instruction he contends should have been given would have told the jury that motive *was* a proper purpose for which the jury could consider the gang evidence.

Armstrong's only response to this point is conclusory statements and bald assertions that the jury may have used the gang evidence to form negative conclusions about Armstrong's character and convicted him on that improper ground. But given how the State used the evidence regarding motive, and given that Armstrong does not contend that the State made any improper arguments regarding the evidence, any such possibility is too speculative and remote. After factoring in the considerable damage

to Armstrong from the properly admitted gang-affiliation evidence, any additional prejudice that may have resulted from the trial court's failure to provide the limiting instruction was so minimal that it did not change the outcome of Armstrong's trial.

5. Finally, Armstrong asserts that his trial counsel was ineffective in failing to ensure that the trial court gave the jury a limiting instruction regarding evidence of Armstrong's involvement in a gang. Specifically, he argues that his trial counsel was ineffective because although she orally requested that a limiting instruction be given in the jury charge, she did not submit a written request for the limiting instruction or object when the trial court failed to give the limiting instruction. Again, we disagree.

For Armstrong to prevail on his ineffectiveness claim, he must show (1) that his trial counsel's performance was constitutionally deficient and (2) that he was prejudiced by her deficient performance. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984); *Robinson v. State*, 308 Ga. 543, 553 (842 SE2d 54) (2020). Armstrong "must satisfy both prongs of the

*Strickland* test, and if he fails to establish one prong, we need not examine the other." Id. To establish prejudice, Armstrong "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Armstrong cannot show prejudice. Even if Armstrong's trial counsel's failure to remind the court about its omission of the limiting instruction by making an objection constituted deficient performance, it did not prejudice Armstrong given our conclusion in Division 4 above that the lack of a limiting instruction did not affect the outcome of Armstrong's trial. See *Davis*, 302 Ga. at 586 (6) (d).[13]

*Judgment affirmed. Melton, C. J., Nahmias, P. J., and Boggs, Bethel, Ellington, and McMillian, JJ., concur. Warren, J., not participating.*

---

[13] Armstrong makes no argument that all the errors we assume today, individually harmless, nevertheless harmed him when aggregated. And no such cumulative prejudice is apparent to us on this record. See *State v. Lane*, 308 Ga. 10, 18 (1) (838 SE2d 808) (2020) ("[A] defendant who wishes to take advantage of the [cumulative error rule] should explain to the reviewing court just how he was prejudiced by the cumulative effect of multiple errors.").

DECIDED DECEMBER 21, 2020.

Murder. Emanuel Superior Court. Before Judge Palmer.

*Bentley C. Adams III*, for appellant.

*S. Hayward Altman, District Attorney, Courtney M. Patterson, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Kathleen L. McCanless, Assistant Attorney General*, for appellee.