308 Ga. 558
FINAL COPY

S20A0364.  MILLS v. THE STATE.

ELLINGTON, Justice.

Roger Mills was found guilty of malice murder and aggravated assault in connection with the death of Masuto Garrett.[1] Mills contends that the trial court erred when, during jury deliberations, it excused a holdout juror without sufficient inquiry or good cause. We agree and so reverse Mills's convictions. We also conclude that the evidence presented at trial was legally sufficient to support the

---

[1] Garrett was killed on December 23, 2017. Mills and co-defendant Moses Bolar were jointly indicted on January 26, 2018, for malice murder, felony murder predicated on aggravated assault, aggravated assault by brandishing a handgun, and aggravated assault by shooting Garrett with a handgun. After a joint trial from October 22 to November 1, 2018, Mills was found guilty on all counts.  The jury acquitted Bolar of malice murder but found him guilty on the remaining counts. The trial court sentenced Mills to life without parole for malice murder and to 20 years' imprisonment for aggravated assault by brandishing a handgun. Inasmuch as we reverse Mills's convictions, we do not reach the issue of whether the count of aggravated assault by brandishing a handgun merged with the count of malice murder. Compare *Hulett v. State*, 296 Ga. 49, 55 (2) (a) (766 SE2d 1) (2014). The trial court merged the second count of aggravated assault with the count of malice murder and vacated the count of felony murder. Mills filed a timely motion for a new trial, which the trial court denied on July 12, 2019. Mills's timely appeal was docketed in this Court to the term beginning in December 2019 and orally argued on February 13, 2020.

convictions, so the State may retry Mills if it chooses.

When viewed in a light most favorable to the verdicts, the evidence at trial showed the following. During the afternoon and early evening of December 23, 2017, a number of people, including Garrett, Mills, and Moses Bolar, Mills's co-defendant, socialized at the home of Stanley Yates. Heather Sears was also present. Sears had previously been in a romantic relationship with Garrett and was then in a romantic relationship with Ben Fields, a friend of Mills and Bolar. Fields was at the gathering but left before Garrett was shot. Mills and Bolar were members of "Cuz6locc," a street gang affiliated with the Crips gang.

Shortly after Garrett arrived at the house, he pulled Sears into a nearby bedroom. The two argued for five to ten minutes, and Sears became upset. Garrett left the room and walked away.

When Garrett reached the front door of the house, Bolar asked him, "what did you say?" Garrett responded that he "ain't said a mother f***ing word," and walked toward Bolar. Bolar pointed his gun at Garrett. Mills stood up and also pointed his gun at Garrett.

Mills and Bolar both fired at Garrett, who was struck three times in the torso and died from his injuries.

Law enforcement officers located four shell casings and a bullet at the crime scene. A GBI firearms examiner testified at trial that three of the shell casings were fired from the same gun and were consistent with having been fired from a Taurus 9mm pistol. The fourth shell casing was fired from a different weapon, which was consistent with a Smith and Wesson 9mm pistol. The medical examiner collected one projectile from Garrett's body. The bullet found at the scene and the bullet taken from Garrett's body were fired from the same gun, which was consistent with a Taurus or Beretta 9mm handgun.

A witness made a cell phone video during the altercation and at trial identified Bolar's voice on the recording as well as the sound of a gunshot. The cell phone video does not show the shooting. Video from a neighbor's surveillance camera showed Mills and Bolar running from the house. Witnesses who viewed the video at trial identified Bolar as carrying a weapon and Mills as falling down and

retrieving something from the ground. Photographs posted to social media showed Mills and Bolar holding weapons consistent with a Smith and Wesson pistol and a Taurus pistol. Mills and Bolar did not testify at trial.

1. Mills does not contest the legal sufficiency of the evidence supporting his conviction. Nevertheless, in accordance with this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Mills guilty beyond a reasonable doubt of the crimes for which he was found guilty. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Mills contends that the trial court erred in removing a lone holdout juror, Juror 23, during deliberations without conducting a sufficient inquiry or without having a good or legal cause to do so. OCGA § 15-12-172 provides in pertinent part:

> If at any time, whether before or after final

submission of the case to the jury, a juror dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause, the first alternate juror shall take the place of the first juror becoming incapacitated.

The question of whether to remove a juror is a matter committed to the trial court's discretion, even after jury deliberations have begun. See *State v. Arnold,* 280 Ga. 487, 489 (629 SE2d 807) (2006) (citation omitted). However,

> [t]here must be some sound basis upon which the trial judge exercises his discretion to remove the juror. A sound basis may be one which serves the legally relevant purpose of preserving public respect for the integrity of the judicial process. Where the basis for the juror's incapacity is not certain or obvious, some hearing or inquiry into the situation is appropriate to the proper exercise of judicial discretion. Dismissal of a juror without any factual support or for a legally irrelevant reason is prejudicial.

Id. (citations and punctuation omitted). "[B]oth the need for investigation and the possibility of harmful error are heightened when a jury has begun deliberations or when a jury is deadlocked." *Semega v. State,* 302 Ga. App. 879, 881 (1) (691 SE2d 923) (2010) (citation and punctuation omitted). See *Hill v. State,* 263 Ga. 37, 41

(8) (427 SE2d 770) (1993) (emphasizing the trial court's obligation to investigate the possible discharge of a juror if the jury has begun to deliberate and the juror has participated in those deliberations).

The record shows the following. After more than four hours of deliberation, the jury sent a note to the court stating: "We have a juror that believes the defendants are not guilty, based on the evidence presented."[2] The court informed the jury that they had been deliberating a relatively short time and directed that they "go home and relax" and return the following morning to resume their deliberations.

After returning the following day and deliberating for more than two hours, the jury sent the judge a note stating:

> Your Honor[,] we have a juror that does not believe any of the witness testimony, does not believe any of the evidence that was submitted by the D.A. for this case, and says that there is no <u>proof</u> that Roger or Moses were in the house on Dec. 23, 2017. And the only thing that would change their mind, would be to see a clear resolution video

---

[2] The jury had sent an earlier note asking to see the cell phone video and a portion of the surveillance video. In that note, the jury also asked about the distinction between malice murder and felony murder. The requested videos were replayed for the jury, and the trial court recharged the jury on malice murder and felony murder before the jury resumed their deliberations.

from within the house showing both Roger and Moses firing the guns. Is this a hung jury?

(Emphasis in original.)

Upon reading the note aloud, the trial court announced its intention to call in the jurors, ask for the identity of the foreperson, and then ask the foreperson and the jury as a whole if the information in the note was accurate. When the trial court did so, the foreperson and the other jurors agreed that the note was accurate.

The trial court then asked for the identity of the individual "that's holding this position," and Juror 23 responded by raising her hand and stating her name. The trial court then informed Juror 23 that it was removing her from the jury, stating:

> I'm going to exercise the authority that I have under OCGA [§] 15-12-172 to remove you from further decision-making in this case. I'm going to make a finding that based upon your position, you are not able to perform your duty, that you are not following instructions of the Court. There's no burden of proof in a criminal case about having a clear resolution video. So I'm going to remove you from the case and replace you with the alternate juror.

Mills objected to the juror's removal. The trial court instructed the

jury to commence deliberations "from ground zero with the alternate juror." Mills was then found guilty on all counts.

Here, the jury's notes, when considered in the context of the trial court's very limited inquiry, show that Juror 23 had concluded that neither defendant was guilty *based on the evidence presented*. The first of the two notes at issue simply says as much. As more specifically explained in the jury's last note, Juror 23 did not believe any witness testimony or any of the State's evidence, and she found no proof that either Mills or Bolar was in the house. It was appropriate for Juror 23 to assess the credibility of the State's witnesses and other evidence. See *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (citations and punctuation omitted)). And nothing in the jury's notes shows that Juror 23 had refused or ceased to participate in the jury's deliberations; rather, it can be reasonably inferred from the jury's communications that Juror 23 had reached a decision different from that of the other

jurors. See *Semega*, 302 Ga. App. at 882 (1) (error to release juror who "had not refused to deliberate but had simply reached a different decision than that of the other jurors"). Compare *Jones v. State*, 307 Ga. 463, 466 (2) n. 5 (835 SE2d 620) (2019) (concluding that the trial court did not abuse its discretion in replacing a juror who acknowledged that she was not able to deliberate and who the foreperson represented had stopped participating in deliberations, but noting that "the trial court explicitly acknowledged that it would be inappropriate to release the juror at issue merely because she was a lone holdout").

The last note goes on to say that "the only thing that would change [Juror 23's] mind, would be to see a clear resolution video from within the house showing both [defendants] firing the guns." However, Juror 23 was not demanding that the State present a clear resolution video in order to satisfy its burden of proof. That Juror 23 had indicated to other jurors that only a clear resolution video would *change* her mind is consistent with her having followed the trial court's instructions regarding the burden of proof and coming to the

conclusion, based on the evidence presented, that the State had failed to carry its burden of establishing the defendants' guilt beyond a reasonable doubt. See *Favors v. State*, 305 Ga. 366, 370 (3) (825 SE2d 164) (2019) ("Qualified jurors under oath are presumed to follow the instructions of the trial court." (citation and punctuation omitted)).

The trial court's very limited inquiry into Juror 23's possible incapacity fell short of providing a sound basis for her excusal. That Juror 23 had reached a conclusion different from that of the other jurors did not show that she was incapacitated or legally unfit to serve. See *Wallace v. State*, 303 Ga. 34, 38 (2) (810 SE2d 93) (2018) ("[A]lternate jurors generally should not serve to substitute for minority jurors who cannot agree with the majority, as taking such a minority position does not by itself render a juror incapacitated or legally unfit to serve, and making such a substitution may constitute an abuse of discretion."). We conclude that the trial court abused its discretion in removing Juror 23. Because such an error was harmful, Mills's convictions must be reversed. See *Arnold*, 280 Ga. at 489

("Dismissal of a juror without any factual support or for a legally irrelevant reason is prejudicial." (citation omitted)).

3.  In view of our disposition in Division 2, we need not address Mills's remaining enumeration of error.

*Judgment reversed.  All the Justices concur.*

DECIDED APRIL 20, 2020.
Murder. Douglas Superior Court. Before Judge McClain.
*Jason M. McLendon; Matthew K. Winchester*, for appellant.
*Ryan R. Leonard, District Attorney, Aimee F. Sobhani, Samantha J. Newman, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General*, for appellee.