**FIFTH DIVISION
MCFADDEN, P. J.,
BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**December 11, 2023**

# In the Court of Appeals of Georgia

A23A1278. NELSON v. THE STATE.

MCFADDEN, Presiding Judge.

A jury found Donna Nelson guilty of two counts of first degree forgery in violation of OCGA § 16-9-1 (b) and two counts of making a false statement in violation of OCGA § 16-10-20 in connection with her efforts to obtain title to real and personal property that had been owned by Sidney Jones before his death in 2020. She was tried jointly with three co-defendants.

After jury deliberations began and the jury deadlocked eleven to one as to two of the defendants, the trial court removed a juror and replaced her with an alternate. Nelson argues that this was reversible error. We agree, because the record shows that the trial court's inquiry into the juror's alleged incapacity did not establish a sufficient

factual basis upon which the trial court could exercise judicial discretion to remove the juror. So we reverse.

Because the evidence was sufficient to support Nelson's convictions, she may be retried. We do not reach Nelson's other claims of error because they are not likely to recur on retrial.

1. *Facts*

Viewed in the light most favorable to the verdicts, the evidence at trial showed that Sidney Jones passed away on April 3, 2020, without a will. Nelson had met Jones in 2017 and lived with him off and on before his death.

After Jones died, Nelson remained living in his house and did not cooperate with the administrator of his estate. Instead, Nelson submitted to various governmental entities several documents falsely indicating that Jones had given her the house, a vehicle, and a pontoon boat. These submissions included a quitclaim deed for Jones's house and a bill of sale for his pontoon boat; both documents appeared to bear Jones's signature, but an expert witness opined that the signatures were forgeries. These submissions also included an affidavit of inheritance falsely stating that Nelson had inherited a vehicle from Jones, and an application to register

the pontoon boat in her name based on the forged bill of sale; Nelson signed both documents. These submissions formed the basis of the state's charges against Nelson.

In addition, the state presented other acts evidence that Nelson filed with the probate court a petition to probate a will purporting to leave all of Jones's property to her. That document, a handwritten affidavit, appeared to bear Jones's signature, but an expert witness opined that the signature was a forgery.

The state charged Nelson with two counts of forgery in the first degree pertaining to the quitclaim deed and the boat's bill of sale; and two counts of making false statements pertaining to Nelson's application to change the boat's registration and her submission of the affidavit of inheritance to obtain title to the vehicle. The state charged Nelson's co-defendants with being parties to the forgeries. (Co-defendant Mark Cain prepared and notarized the forged quitclaim deed and notarized the forged bill of sale for the boat. Co-defendants Mary Stephens and Cynthia Padgett witnessed the forged quit-claim deed. )

2. *Removal of a juror during deliberations*

After the jury began deliberating, the trial court removed a juror — identified in the record as Juror White — and replaced her with an alternate. OCGA § 15-12-172 permits a trial court to replace a juror with an alternate if, among other reasons,

3

the juror "upon . . . good cause shown to the court is found to be unable to perform [her] duty[.]" While a "trial court generally has broad discretion to remove a juror for cause[,] . . . this discretion is narrowed once deliberations have begun[.]" *Jones v. State*, 314 Ga. 214, 222 (2) (b) (875 SE2d 737) (2022). Nelson argues that the trial court abused his discretion when he removed Juror White after deliberations had begun, and we agree.

A trial court must have a sound basis upon which to exercise his discretion in removing a juror. *Moon v. State*, 312 Ga. 31, 36 (2) (860 SE2d 519) (2021). If "the basis for the juror's incapacity is not certain or obvious, some hearing or inquiry into the situation is appropriate to the proper exercise of judicial discretion." Id. at 37 (2) (citation and punctuation omitted). When the jury is deadlocked after beginning deliberations, "the trial court ha[s] a heightened responsibility to perform a thorough investigation into the circumstances surrounding the juror's decision-making. . . ." Id. at 45 (2) (b).

A trial court abuses his discretion if he does not engage in a sufficient inquiry to develop facts that show a permissible basis for removal. See *Jones*, 314 Ga. at 225 (2) (b). It is not permissible for the trial court to remove a juror "for reasons related to the juror's view of the trial evidence[.]" Id. at 223 (2) (b). See *Mills v. State*, 308

Ga. 558, 562 (2) (842 SE2d 284) (2020) (the fact that a juror "had reached a conclusion different from that of the other jurors did not show that she was incapacitated or legally unfit to serve").

The record in this case shows that the trial court first learned of an issue with Juror White through a series of notes from the jury. Those notes indicated that the jury was deadlocked eleven to one as to two of the four defendants. One of the notes stated that the holdout juror held a belief that two of Nelson's co-defendants, Stephens and Padgett, had been "manipulated due to mental state[.]" The trial court instructed the jury to continue deliberating and not to consider "manipulation due to mental state" because that issue was not before them, but when the foreperson later reported that the jury was not making any headway, the trial court spoke to all of the jurors individually.

The trial court's inquiry revealed that the jury had reached unanimous verdicts as to two of the four defendants, but that Juror White was not participating in the deliberations as to the other two defendants, presumably Stephens and Padgett. Some of the jurors either implied or expressly stated that Juror White initially had participated in deliberations but at some point had stopped deliberating. One of those jurors suggested that the reason for Juror White's actions was that "[s]he cannot make

5

this decision because of the person's mental state." Other jurors simply responded affirmatively when the trial court asked them if a juror either had not deliberated or was not deliberating. (The trial court varied the tense used in his questions. ) Juror White told the trial court that she felt she had participated in the deliberations as to all four defendants and that the other jurors "just don't like my answer."

Over the objection of Nelson's counsel, the trial court removed Juror White and replaced her with an alternate. After doing so, the trial court asked the remaining jurors, "[w]as the juror I removed not participating in deliberations," and the jurors, as a group, responded affirmatively. The trial court did not set forth his reasons for the removal in a written order, but he stated on the record that he removed Juror White because the foreperson of the jury had made him aware that the juror "was not participating based on a reasoning that the court had not used," because she "did not follow the instructions of the court," and because "eleven jurors ha[d] told [the trial court] she was not participating."

This record did not provide the trial court with a sufficient basis upon which to exercise his discretion in removing Juror White. As stated above, "[a] juror may not be removed for reasons related to the juror's view of the trial evidence, even if the juror's insistence on that view has negative effects on other jurors and the jury's

6

deliberations." *Jones*, 314 Ga. at 223 (2) (b). Before removing a juror, a trial court must develop sufficient facts "to conclude with confidence that the reason for removal was unrelated to the juror's view of the evidence." Id. at 225 (2) (b). The trial court did not elicit adequate facts through his inquiry to meet this requirement.

The fact that "eleven jurors [had] told [the trial court that Juror White] was not participating" in deliberations does not, without more inquiry, support the removal. A trial court may not remove a juror for failing to deliberate if the juror initially participated in deliberations but then "reached a firm conclusion as to the counts before the jury and declined to deliberate further." *Jones*, 314 Ga. at 227 (2) (b). This is true even if the juror reaches that firm conclusion shortly after the start of deliberations. See id. at 230 (2) (b) n. 16.

Nothing in the record before us shows that Juror White refused from the outset to participate in deliberations. Instead, some of the facts elicited by the trial court show the contrary. The jury's notes indicate that Juror White participated in votes on all of the defendants. Juror White stated that she *had* participated in deliberations but that the other jurors did not like her conclusions. And none of the other jurors stated that Juror White had refused to participate in any of the deliberations. Some of them

7

expressly stated or implied that Juror White had initially participated in deliberations, and the others did not address that issue one way or the other.

A comment by the trial court during the midst of his inquiry suggests that he believed Juror White only participated in the deliberations as to two of the four defendants. This may have been the case, but again, no juror actually said so, the jury's note stating that they were deadlocked eleven to one on the remaining defendants suggests otherwise, and the trial court's inquiry did not clarify that point.

The trial court's other expressed reasons for removing Juror White are also not supported by the facts developed in the trial court's inquiry. The trial court stated that Juror White "was not participating based on a reasoning that the court had not used" and that she "did not follow the instructions of the court[.]" From the context we infer that the trial court was referring to Juror White's alleged concerns about the "mental state" of two of Nelson's co-defendants and the trial court's instruction that the jury not consider that issue. For the purpose of our analysis we assume without deciding that it was appropriate for the trial court to remove the issue of the defendants' "mental state" from the jury's consideration and we assume without deciding that the trial court was allowed to remove a juror for nevertheless considering "mental state" in reaching an opinion on the counts presented. Even so, the trial court did not

8

question Juror White about whether she stopped participating in deliberations based on concerns about some defendants' "mental state." Instead, the trial court appears to have relied on statements made by other jurors, either during questioning or in notes. Those accounts from jurors other than Juror White did not provide the trial court with an adequate basis for concluding that Juror White had disregarded the trial court's instructions or otherwise acted improperly during deliberations. See *Moon*, 312 Ga. at 48-50 (2) (b).

For these reasons, we find that from the information in the record, the trial court did not have grounds to "conclude with confidence that the reason for removal was unrelated to the juror's view of the evidence." *Jones*, 314 Ga. 225 (2) (b). Consequently, "the trial court's basis for dismissing [Juror White] was unsound" and her removal was an abuse of discretion. *Moon*, 312 Ga. at 49 (2) (b).

We are not persuaded by the state's argument that this error was harmless. "[R]emoving a dissenting juror when the jury is deadlocked risks violating a defendant's right to a unanimous verdict[.]" *Moon*, 312 Ga. at 37 (2). The state's assertion that the error only affected two of Nelson's co-defendants rests on speculation as to what would have happened had Juror White remained on the jury. The state cites no authority, and we have found none, that permits a harmless error

9

analysis when a trial court has improperly removed a juror after deliberations have begun. To the contrary, our Supreme Court has held that this type of error is "presumed harmful." Id. at 31. See *State v. Arnold*, 280 Ga. 487, 489 (629 SE2d 807) (2006) ("Dismissal of a juror without any factual support or for a legally irrelevant reason is prejudicial."); see also *Mills*, 308 Ga. at 560 (2). "Because the trial court abused [his] discretion in removing [Juror White] from the jury, we conclude that [Nelson's] convictions must be reversed." *Jones*, 314 Ga. at 231 (2) (b). Accord *Moon*, 312 Ga. at 50 (2) (b).

3. *Retrial*

Although Nelson does not contest the legal sufficiency of the evidence supporting her conviction, we nevertheless consider whether the evidence presented at trial was sufficient to permit Nelson to be retried. See *O'Brien v. State*, 366 Ga. App. 248, 250 n. 1 (881 SE2d 710) (2022). Having reviewed the record in the light most favorable to the verdicts, we conclude that "the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find [Nelson] guilty beyond a reasonable doubt of the crimes for which [she] was found guilty. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979)." *Mills*, 308 Ga. at 559 (1). So Nelson may be retried.

10

4. *Remaining enumerations of error*

Nelson asserts several other enumerations of error, regarding whether the trial court should have granted Nelson a mistrial in connection with the jury deliberation issue and whether the trial court should have taken action in response to an alleged conflict of interest in defense counsel's joint representation of all four co-defendants which arose out of the juror deliberation issue. These claims are unlikely to recur on retrial, and would appear in a different form if they do recur, so we do not address them.

*Judgment reversed. Brown and Markle, JJ., concur.*