320 Ga. 457
FINAL COPY

S24A1021. MILLS v. THE STATE.

BOGGS, Chief Justice.

Following a reversal of his convictions on appeal and a retrial,

Appellant Roger Tashawn Mills was convicted of felony murder and

related crimes in connection with the 2017 shooting death of Masuto

Garrett.[1] On appeal, Appellant argues that the evidence was

---

[1] The shooting and connected crimes occurred on December 23, 2017. On January 26, 2018, a Douglas County grand jury indicted Appellant and his co-defendant, Moses Bolar, for malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), aggravated assault by brandishing a handgun (Count 3), and aggravated assault (Count 4). Appellant was jointly tried with Bolar from October 22 to November 1, 2018. Appellant was found guilty on all counts. The jury acquitted Bolar of malice murder, but found him guilty on the remaining counts. After sentencing and the denial of his motion for new trial, Appellant filed his first appeal to this Court.

On April 20, 2020, we reversed Appellant's convictions on the ground that the trial court abused its discretion in removing a holdout juror and that such error was harmful. See *Mills v. State*, 308 Ga. 558, 562-563 (842 SE2d 284) (2020).

On June 11, 2021, Appellant and Bolar were re-indicted for street gang activity in violation of the Street Gang Terrorism and Prevention Act (Count 1), felony murder predicated on participation in criminal street gang activity (Count 2), felony murder predicated on aggravated assault (Count 3), felony murder predicated on aggravated battery (Counts 4 and 5), aggravated assault (Count 6), aggravated battery (Counts 7 and 8), and possession of a firearm during commission of a felony (Counts 9 and 10). Appellant was retried

insufficient to support his convictions because the State failed to disprove his justification defense beyond a reasonable doubt and that it was plain error for the trial court to allow the State to present other-acts evidence. For the reasons set forth below, we affirm.

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed that in the early evening of December 23, 2017, several people, including Appellant, Moses Bolar, and Heather Sears — who had previously been romantically involved with Garrett — were socializing at the home of Stanley Yates, which was known as the "hangout spot" where "everybody in the neighborhood went." Around 6:30 p.m., Sears sent a text message to Garrett, asking him "to bring [her] something to eat

alongside Bolar — whose case is not part of this appeal — from October 4 through October 14, 2021. The jury found Appellant guilty on Counts 3, 5, 6, 8 and 9, and not guilty on the remaining counts. He was sentenced to life without parole for felony murder (Count 3) and five years consecutive for possession of a firearm during the commission of a felony (Count 9). All remaining counts were either vacated by operation of law or merged for sentencing purposes. Appellant timely filed a motion for new trial on November 22, 2021. After a hearing, the trial court denied the motion on May 26, 2023. Appellant filed a timely notice of appeal, and the case was docketed to this Court's August 2024 term and submitted for a decision on the briefs.

because [she] was hungry." Upon arriving at Yates's house after receiving this text message, Garrett "walked in the house calling everybody . . . [a] broke a** . . . saying they ain't doing nothing with the[ir] life." Garrett then "grabbed . . . the back of [Sears's] shirt," "pulled [her] into [a] room," and began "yelling" at Sears because he was "really mad" that she was at Yates's house with "all these dudes." After arguing with Sears for about five to ten minutes, Garrett proceeded to the living room, walking by Appellant and Bolar, who were sitting at a table, and "went directly to the front door." As Garrett was about to open the door to leave the house, Bolar asked Garrett, "what did you say?" In response, Garrett turned around to face Bolar and replied, "I didn't say a motherf**king word to you." Garrett then began "walking towards [Bolar]" and "pointing his finger" at him. Bolar stood up from the table and "got his [gun] and pointed it directly at [Garrett]." Appellant also drew a gun and "pointed [it] at [Garrett's] face." Garrett used his hand to "swipe" at Appellant's gun. Appellant and Bolar then began firing at Garrett, who was struck three times and

3

died from his injuries.

At trial, witnesses testified that Garrett did not have a gun or weapon during the exchange, that Appellant and Bolar were the only people involved in the dispute with Garrett, and that they did not see anyone besides Appellant and Bolar with guns. The State's medical examiner testified that Garrett was struck once in the shoulder and twice in the back, and that the gunshot wounds to Garrett's back were consistent with Garrett lying on the ground and someone firing downward at him. Additionally, the State introduced a video from a neighbor's surveillance camera, which captured several people — including Appellant and Bolar — fleeing from Yates's house after the shootings, and a cell phone video one of the witnesses made during the altercation. Although the cell phone video captured the sounds of four gunshots and a visual of Garrett swiping at Appellant's gun, it did not show the actual shootings. However, a crime scene investigator testified that by combining the video from the neighbor's surveillance system and the video from the witness's cell phone, investigators were able to determine that Bolar

fled from Yates's house after the initial gunshot and that Appellant did not flee from the house until the other three rounds of gunshots were fired. Further, the investigator testified that based on the videos and witness statements, he determined that the initial gunshot was fired by Bolar and that this gunshot caused Garrett to "stumble and fall to the ground" and that he would have been visibly "bleeding on both the front and back shoulder of his hoodie," when Appellant shot him multiple times "at a downward angle." The State's firearm expert testified that a total of four shell casings were discovered at the crime scene, three of which were consistent with being fired from the same Taurus 9-millimeter pistol and one of which was consistent with being fired from a Smith and Wesson pistol. Appellant later testified to shooting Garrett in the back with a Taurus gun; Bolar testified to shooting Garrett in the shoulder with a Smith and Wesson gun.

The State's theory of the case was that the shooting was gang-related and that Appellant and Bolar were motivated to retaliate against Garrett after feeling that Garrett disrespected them. The

5

State introduced several videos and photographs featuring Appellant and Bolar wearing certain clothing, making certain signs, and using certain language, all of which the State's expert in criminal street gang activity testified as being associated with "Cuz6locc," a street gang affiliated with the Crips gang. Specifically, the State's expert noted that the video and photographs showed Appellant and Bolar carrying blue bandannas on their left sides, which is "a common identifier that has been adopted by Crip gangs." The State's expert further testified that he believed Appellant and Bolar were affiliated with Cuz6locc; that retaliation and "act[s] of violence" due to a perception of disrespect is common among gang members; and that if one gang member "starts a fight" "as a result of . . . confrontation," then there is an expectation that the "other members . . . jump in."

The defense's theory of the case was that Appellant was justified in using deadly force against Garrett because Appellant reasonably feared for his own life and Bolar's life. Appellant testified that as Garrett walked toward the door to leave Yates's house,

6

Appellant and Bolar were having a separate conversation when Garrett turned around and said, "I didn't say a motherf**king word to you." Garrett then started walking toward Bolar while "pulling up his pants . . . [l]ike he [was] trying to . . . fight." Appellant picked up a loaded gun that was lying on the table with the intention "[j]ust to scare [Garrett]" because Appellant had an "instinct" that Garrett had "a gun in some type of way." Garrett then "rushed" toward Appellant, "grabb[ing] the hand that [Appellant] had the gun in." Appellant's "back hit the table," and Appellant and Garrett both fell onto the floor. As Appellant fell, he "let go of the gun" and a struggle between Appellant and Garrett over the gun ensued. Appellant then remembered that he had a second gun in his waistband and "jumped up" as Garrett was "going for the other gun." Appellant pulled out the gun from his hip and began firing at Garrett "[t]o stop [Garrett] from getting the other gun" because it was a "guarantee" that if Garrett got the gun, Garrett was going to shoot him. Appellant also testified that, prior to Garrett entering Yates's house before the shooting, he had never seen Garrett before, had never

7

communicated with him, and had never heard of him.

During cross-examination, the prosecution questioned Appellant about the "G" and "C" tattooed on his hands and whether it stood for "Gangster Crip." Appellant responded that it stood for "Gucci" and "Chanel," and that he was not gang affiliated. Appellant was also asked about a photograph in which he was shown "throw[ing] up the C" and "carrying [a] blue bandanna." Appellant responded that "[a]nybody can throw up a C" and that he was carrying the blue bandanna because he was "false flagging." The prosecution further asked whether Appellant saw Garrett with a weapon or "going in his pockets" or "behind his waist" to grab a gun before Appellant grabbed the gun from the table and "racked it." Appellant responded that he did not. The prosecution also asked Appellant how many shots he had fired at Garrett and whether he had shot Garrett in the back. Appellant responded that he did not fire the first shot but that he had fired the other three shots with a Taurus gun and that he shot Garrett in the back. Further, when Appellant was asked why he decided to become involved in an

8

altercation that did not involve him, Appellant responded, "[Bolar] is my family."

2. On appeal, Appellant contends that the evidence was insufficient to support his convictions because the State failed to disprove that he was justified in using deadly force against Garrett to defend himself and Bolar. We disagree.

When evaluating the sufficiency of the evidence, the proper standard of review is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979) (emphasis in original). A person generally "is justified in using force which is intended or likely to cause death . . . only if he . . . reasonably believes that such force is necessary to prevent death or great bodily injury to himself or . . . a third person." OCGA § 16-3-21 (a). "When a defendant presents evidence that he was justified in using deadly force, the State bears the burden of disproving the defense beyond a reasonable doubt." *Birdow v. State*,

305 Ga. 48, 50 (823 SE2d 736) (2019). "However, it is the role of the jury to evaluate the evidence and, when doing so, the jury is free to reject any evidence in support of a justification defense and to accept the evidence that the defendant did not act in self-defense." *Russell v. State*, 319 Ga. 556, 559 (905 SE2d 578) (2024) (cleaned up).

Here, the trial evidence was sufficient to authorize the jury to conclude that Appellant did not reasonably believe that deadly force was necessary to defend himself and Bolar during the encounter with Garrett, and, thus, to reject Appellant's justification defense. Both the medical examiner who conducted Garrett's autopsy and the crime scene investigator testified that Garrett was likely already injured and on the ground when Appellant shot him in the back multiple times. Further, witnesses to the shooting testified that Garrett did not have a weapon during the incident. Moreover, although Appellant testified that he reasonably feared for his life, he also admitted during cross-examination that he had shot Garrett in the back and that he never saw Garrett with a weapon. See *Walker v. State*, 312 Ga. 232, 235 (862 SE2d 285) (2021) ("the

jury was entitled to disbelieve [the defendant's] testimony," in which he claimed that he shot the victim in self-defense). See also *Mims v. State*, 310 Ga. 853, 855 (854 SE2d 742) (2021) ("[T]he defendant's testimony, in which he claimed he was justified or provoked into acting, may itself be considered substantive evidence of guilt when disbelieved by the jury, as long as some corroborative evidence exists for the charged offense."). Accordingly, Appellant has not established that the State failed to disprove his justification defense beyond a reasonable doubt.

3. Appellant also argues that it was plain error for the trial court to admit other-acts evidence that Appellant and others allegedly assaulted another person following a verbal altercation. This enumeration of error fails.

Prior to the start of Appellant's first trial, the State filed a notice of intent to introduce other-acts evidence under OCGA § 24-4-404 (b) ("Rule 404 (b)"). Specifically, the State sought to introduce evidence that approximately two weeks prior to Garrett's murder, Appellant, Bolar, and five or six other people "banded together as a

11

pack" and assaulted Erice Williams[2] after Williams confronted Appellant for previously shooting him with a pellet gun. The State contended that the evidence was relevant to an issue other than propensity because it showed that Appellant and Bolar were members of the same street gang and "as such have a duty to support each other if they are involved in a dispute."

Following a hearing, at which Appellant objected to the admission of the incident involving Williams, the trial court ruled that the evidence was admissible under Rule 404 (b), concluding that the incident was relevant to show motive and that the probative value of the evidence outweighed any potential prejudice. Specifically, the trial court found that the evidence was relevant to show motive because it explained "the relationship between [Appellant and Bolar]," "why they would jointly participate in the [charged] crime," and that they acted "as part of their gang membership."

---

[2] Williams was also present at Yates's house during the shooting of Garrett and testified to the events that transpired on that evening.

Following this Court's remand of the case after Appellant's first appeal, Appellant did not ask the trial court to reconsider its evidentiary ruling regarding this incident.

At the second trial, Williams testified about the incident, explaining that he was walking to a friend's house when he saw "a whole bunch of people" at the neighborhood park. Williams approached the group and asked them whether Appellant was nearby. Upon being asked why Williams was looking for Appellant, Williams explained that he had previously been walking in the area when he was shot with a pellet gun and that he believed Appellant was the shooter. Appellant then exited a nearby car to approach Williams, and Williams asked Appellant whether Appellant had "heard what [he] said" about the pellet gun. Appellant responded by telling Williams "don't make me go to the house and get a real gun." Appellant then walked away from the park, but Williams stayed in the area. Shortly after leaving, Appellant rejoined the group, holding in his hand "a pistol or something." Williams just "stood there," and Bolar, who was among the group, told Williams that he

13

"need[ed] to get away from around here." Williams responded to Bolar that he would "whoop [his] a\*\*" and the people "behind [him]." Williams was then "hit . . . in the back of the head with a . . . pistol" and "got jumped by like six or seven people," who all "just started kicking [him] all over the place." Upon being asked whether he saw who had hit him in the head with the pistol, Williams responded that he "ha[d] no idea." However, when the prosecution asked whether Williams recalled "saying that [Appellant] hit [him] with the gun" at a "prior hearing," Williams responded that he "remember[ed] saying that" but that he no longer remembered the incident. Williams also testified that, prior to being attacked, he was aware that Bolar was affiliated with the Crips gang and that "[Appellant had] started flagging and stuff like that" after Appellant began "hanging with [Bolar]." When asked what Williams meant by "flagging," he explained "[l]ike rocking a blue bandanna."

Appellant argues that it was plain error for the State to be allowed to present the evidence involving Williams pursuant to Rule

14

404 (b).[3] To establish plain error, Appellant

> must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity, or public reputation of judicial proceedings.

*Denson v. State*, 307 Ga. 545, 547-548 (837 SE2d 261) (2019) (cleaned up). Here, Appellant cannot establish plain error because he has not shown a clear error in the admission of the evidence pursuant to Rule 404 (b). See *State v. Herrera-Bustamante*, 304 Ga. 259, 264 (818 SE2d 552) (2018) ("We need not analyze all of the elements of this test when, as in this case, the defendant has failed to establish one of them.").

Rule 404 (b) provides that "evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith, but [that] such evidence is admissible for other purposes, including to prove . . .

---

[3] Appellant does not address whether his objection to this evidence at the first trial preserves the issue on appeal from the second trial, and we do not consider this issue here.

15

motive." *Kirby v. State*, 304 Ga. 472, 479 (819 SE2d 468) (2018) (cleaned up).

> The party offering evidence under [Rule 404 (b)] must show three things: (1) the evidence is relevant to an issue in the case other than the defendant's character; (2) the probative value of the evidence is not substantially outweighed by its undue prejudice; and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the other act.

Id.

(a) Here, the incident involving Williams was relevant to the issue of motive. See OCGA § 24-4-401 (relevant evidence is "evidence [that has] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). The State's theory of the case was that the shooting of Garrett was gang-related, and that Appellant was motivated to shoot Garrett as a form of retaliation after he disrespected Bolar, a fellow member of Cuz6locc. The incident at issue — which involved Appellant and others retaliating against Williams after Williams allegedly disrespected Bolar — was relevant to help explain to the jury

16

Appellant's motivation in shooting Garret. Thus, evidence that Appellant and Bolar were fellow gang members and that Appellant had previously retaliated against someone following a verbal altercation involving Bolar, "in combination with the expert testimony that gangs consider standing up to them to be an act of disrespect, provided evidence of [Appellant]'s motive" to shoot Garrett for "standing up to a fellow gang member." *Armstrong v. State*, 310 Ga. 598, 602-603 (852 SE2d 824) (2020).

(b) The second part of the Rule 404 (b) analysis is governed by OCGA § 24-4-403 ("Rule 403"), which provides for the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Under Rule 403, "other acts evidence should be excluded if it constitutes matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Hood v. State*, 309 Ga. 493, 500-501 (847 SE2d 172) (2020) (cleaned up). A "trial court's decision to

17

exclude evidence under Rule 403 is an extraordinary remedy which should be used only sparingly." *Kirby*, 304 Ga. at 480. "Thus, in reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Lee v. State*, 318 Ga. 412, 419 (897 SE2d 856) (2024) (cleaned up).

Here, we conclude that the trial court properly concluded that the probative value of this evidence was not substantially outweighed by its undue prejudice. The prosecutorial need for this evidence was significant, given that the State had to disprove Appellant's justification defense, and it is otherwise unclear what motive Appellant would have had to shoot Garrett — someone Appellant claimed to have never seen or heard of — after merely witnessing a brief verbal altercation between Garrett and Bolar. See *Armstrong*, 310 Ga. at 603 ("[T]he prosecutorial need for the other acts evidence showing gang membership was high because, without it, it is unclear what motive [the defendant] would have to shoot [the victim] in a crowded park merely because [the victim] was in a

dispute with [an alleged fellow gang member]." (cleaned up)). Thus, the incident involving Williams, along with the expert testimony on street gangs and the evidence that both Appellant and Bolar were members of Cuz6locc, helped the State explain its theory that Appellant did not shoot Garrett in self-defense but, rather, shot Garrett as a form of retaliation after Garrett disrespected a fellow gang member. Moreover, given the significant probative value of the evidence in rebutting Appellant's justification defense, and "reviewing the evidence in a light most favorable to its admission," id. (cleaned up), we conclude that the trial court did not abuse its discretion in determining that the probative value of the evidence was not substantially outweighed by undue prejudice. See id. ("Although evidence of gang membership can be highly prejudicial, all inculpatory evidence is inherently prejudicial; it is only when *unfair* prejudice substantially outweighs probative value that the rule permits exclusion." (cleaned up; emphasis in original)).

(c) Finally, there was sufficient proof for a jury to find by a preponderance of the evidence that Appellant was involved in this

19

incident. Appellant argues that there was not sufficient proof because Williams testified that he could not remember whether it was Appellant who hit him in the head with the pistol. However, Williams's testimony established that he saw Appellant right before the attack, and that he recalled previously testifying that Appellant was the one who hit him in the back of the head with the pistol. Thus, there was sufficient proof for the jury to find by a preponderance of the evidence that Appellant was involved in this incident. See *Coxwell v. Coxwell*, 296 Ga. 311, 314 (765 SE2d 320) (2014) ("Preponderance of evidence means that superior weight of evidence upon the issues involved, which, while not enough to free the mind wholly from a reasonable doubt, is yet sufficient to incline a reasonable and impartial mind to one side of the issue rather than to the other." (cleaned up)). Accordingly, Appellant's claim that it was plain error for this incident to be admitted into evidence pursuant to Rule 404 (b) fails.[4]

---

[4] The State additionally argues, for the first time on appeal, that the evidence involving Williams is also admissible under OCGA § 24-4-418 (a),

*Judgment affirmed. All the Justices concur.*


Decided December 10, 2024.

Murder. Douglas Superior Court. Before Judge McClain.

*James K. Luttrell*, for appellant.

*Dalia Racine, District Attorney, Kelsey Smith, Assistant District Attorney; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Clint C. Malcolm, Meghan H. Hill, Senior Assistant Attorneys General, Grace G. Griffith, Assistant Attorney General*, for appellee.

---

which provides that "[i]n a criminal proceeding in which the accused is accused of conducting or participating in criminal gang activity . . . evidence of the accused's commission of criminal gang activity . . . shall be admissible and may be considered for its bearing on any matter to which it is relevant." However, because at trial the State sought to introduce this evidence pursuant to Rule 404 (b) and we conclude that the trial court's admission of this evidence under Rule 404 (b) does not constitute plain error, we do not address this argument.

21