**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 3, 2025**

# In the Court of Appeals of Georgia

A25A1366. STEUSLOFF v. FINELLI et al.

A25A1367. HINTON v. FINELLI et al.

BROWN, Judge.

Stacy and Anthony Finelli ("Plaintiffs") sued their neighbors, Jean and Thomas Steusloff ("Defendants"), after a dog, owned by Defendants' son and living at Defendants' home, attacked Stacy when she stopped by Defendants' home to drop off Defendants' mail.[1] A jury returned a verdict in favor of Plaintiffs for $5,620,159.99. The trial court entered final judgment on the jury's verdict and granted Plaintiffs'

---

[1] Both Anthony ("Tony") and Thomas ("Tom") died during the pendency of this action. On January 11, 2023, the trial court granted the parties' consent motion to substitute Jean as the executor of Tom's estate. And on September 26, 2023, the trial court granted the parties' consent motion to substitute Stacy as the administrator of Tony's estate. These appointments will be discussed further infra.

post-trial motion for attorney fees and costs; the trial court also denied a request for a new trial. Jean and William Michael Hinton, as the temporary administrator of Tom's estate ("the administrator"), filed these related appeals.[2] In Case No. A25A1366, Jean contends that the trial court made several errors, including denying her motion for directed verdict; improperly admitting the testimony of the dog's veterinarian; erroneously charging the jury; entering the judgment jointly and severally instead of apportioning damages; awarding attorney fees; and ordering a bond. In Case No. A25A1367, the administrator contends that the failure to substitute a proper estate representative for Tom renders the judgment against him void and that

---

[2] As an initial matter, we note that in many instances neither Jean nor the administrator identify in their appellate briefs how each enumerated error was preserved for review. This not only violates our rules, but also constrains our review, especially given the substantial record in this case. See Court of Appeals Rule 25 (a). Additionally, as we recently pointed out in a case with similar infirmities, Jean's recitation of the material facts is often incomplete and skewed in her favor, hindering "our ability to delineate the relevant facts — especially in the light most favorable to the jury's verdict (as we are required to do)." *Baker v. Cuthbertson*, 372 Ga. App. 753, 754 (906 SE2d 764) (2024). As we have repeatedly advised litigants and their attorneys, it is not our duty to "cull the record on behalf of [the parties], particularly in a case such as this where the record is voluminous." (Citation and punctuation omitted.) Id. Accordingly, even though we have performed a comprehensive review of the record, "if we have missed something in the record or misconstrued an argument, the responsibility rests with [the appellants'] counsel." (Citation and punctuation omitted.) Id.

the trial court erred in entering judgment jointly and severally. For the reasons that follow, we vacate the order granting Plaintiffs' motion for fees pursuant to OCGA § 9-11-68 and setting out the final judgment as joint and several, and remand the case for the trial court to reissue its judgment to conform to the jury's verdict apportioning fault and then reconsider Plaintiffs' motion for fees in light of that conformance. We otherwise affirm.

> Following a jury's verdict and a trial court's subsequent entry of a judgment, this Court must affirm the judgment if there is any evidence to support the verdict, because the jurors are the exclusive judges of the weight and credibility of the evidence. We must construe the evidence with every inference and presumption in favor of upholding the verdict.

(Citation and punctuation omitted.) *Dunwoody Obstetrics and Gynecology v. Franklin*, 363 Ga. App. 90, 91 (870 SE2d 592) (2022). "The standard[ ] of review for directed verdict [is] the same." (Citation and punctuation omitted.) *Georgia Trails and Rentals v. Rogers*, 359 Ga. App. 207, 208 (855 SE2d 103) (2021). See also *Miller v. Lynch*, 351 Ga. App. 361, 362 (830 SE2d 749) (2019) ("[a] trial court may direct a verdict only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular

verdict") (citation and punctuation omitted). Where there is conflicting evidence, we construe it to uphold the verdict. See *Harris v. Martin*, 373 Ga. App. 158, 159 (908 SE2d 17) (2024).

Viewed under this standard, the trial evidence shows that on March 24, 2022, Stacy walked next door to bring Defendants their mail that had been misdelivered to Plaintiffs' home. Stacy knocked on the front door and Jean, who was home alone because Tom and their son were out of town, opened the door. The two women spoke for several minutes on the front porch and then Jean invited Stacy inside to see the master bedroom renovation. As soon as Stacy walked in the door, the dog, a pit bull mix, who had been sleeping unrestrained in the living room, jumped on her and bit her right arm. The dog released Stacy's arm at which point Stacy told Jean she was "okay" and attempted to leave. As Stacy stepped onto the front stoop, the dog knocked her down onto the pavement. Stacy tried to protect her face and throat with her arms and ended up with her head in the bushes as the dog repeatedly bit and "locked down" on her. The dog bit Stacy on both arms, her throat, and her right leg, "shredd[ing]" her arm, chipping a bone in her leg, and exposing her Achilles tendon. Stacy spent ten days in the hospital immediately following the attack and three months

4

in a wheelchair, and had to undergo numerous surgeries and procedures, including debridement, skin grafts, and the partial removal of her Achilles tendon.

At the time of the attack, Defendants' son and the dog had been living with Defendants at their home for almost two years, and Defendants were helping to care for the dog. Defendants' son testified that he walked the dog all the time in the park with his parents and that the dog was a "great walking dog." Plaintiff Tony Finelli testified that he only saw the dog twice in the neighborhood and that one time he was playing with his dog ("a sweet . . . dumb doodle") in his front yard when defendant Tom Steusloff walked by with the dog. As Tony's dog began trotting toward Tom and the dog, Tom began yelling and "screaming at [Tony]." When Tony said his dog was harmless, Tom responded, "not your dog . . . [t]his dog . . . [t]his dog is a dangerous animal . . . [t]his is a dangerous dog." Tony grabbed his dog and brought it inside and told Stacy about the interaction, stating that he could not "believe how much [Tom] was yelling at [him] and just screaming." Tony never told Stacy what Tom had said about the dog being dangerous.

During an investigation by Hall County Animal Control following the attack, Jean told officers that she "'invited Stacy into the house to see the master bedroom.

5

As Stacy walked in the door, Jean heard the dog get up and charge the doorway and attack [Stacy]." Jean also told officers the dog had been aggressive twice in the past and that both incidents were unprovoked. During one incident, a friend of Defendants who had been visiting for several days, went to hug Jean and the dog jumped on Jean's back and knocked both women down. Jean explained to animal control that the dog had become "agitated and she had to get in between . . . to keep the dog from the friend." In the second incident, the dog jumped up on an elderly neighbor of the Defendants as she was petting him and bit her hand. The elderly neighbor testified that she had a bruised thigh and required medical attention for the bite. Jean characterized the dog's behavior during both incidents as aggressive and testified that "somebody might consider somebody [sic] jumping up on them vicious."

Plaintiffs sued Defendants under OCGA § 51-3-1 for personal injuries and loss of consortium. A jury returned a verdict in favor of Plaintiffs for $5,620,159.99, and apportioned damages between Jean (25 percent) and Tom (75 percent). The trial court entered final judgment on the jury's verdict against "Defendants as set forth in the Verdicts" attached to the final judgment, as well as on Plaintiffs' post-trial motion for attorney fees and costs in the amount of $2,048,347.92, for a total judgment of

$7,668,507.91 "against Defendants." The trial court also denied the administrator's motion for new trial. These direct appeals followed.

*Case No. A25A1367*

1. The administrator of Tom's estate argues that the trial court erred in denying his motion for new trial because failure to substitute a proper estate representative for Tom renders the judgment against him void. Plaintiffs disagree, but first contend that this appeal should be dismissed for lack of jurisdiction because the administrator is, in substance, seeking to set aside the judgment based on faulty pleadings and a motion for new trial is not the proper vehicle for challenging pleadings. See *Pillow v. Seymour*, 255 Ga. 683, 684 (341 SE2d 447) (1986) ("[w]here a motion for new trial is not a proper vehicle for review of a trial court's action, the motion has no validity and will not extend the time for filing the notice of appeal").

(a) Before addressing the merits of these arguments, it is necessary to lay out the events leading up to the administrator's appointment. Plaintiffs filed suit on April 1, 2022. On September 2, 2022, Defendants filed a notice of suggestion of death, indicating that defendant Tom Steusloff had passed away on August 27, 2022. On January 11, 2023, the parties filed a consent motion to substitute Jean as the executor

7

of Tom's estate as a defendant in the action. The motion indicated that "[c]o-defendant Jean Steusloff was named executor of the Estate of [Tom] Steusloff," and included a notarized acknowledgment of service signed by Jean, stating as follows: "The undersigned, Jean Steusloff, as executor of the Estate of Thomas Steusloff, hereby acknowledges service of *Defendant's Notice of Suggestion of Death*[.]" The trial court granted the consent motion on January 11, 2023.

Trial began on May 15, 2023, the jury returned its verdict four days later, and plaintiff Tony Finelli passed away approximately a month after the verdict. Plaintiffs subsequently moved for fees and expenses pursuant to OCGA § 9-11-68, and for the entry of final judgment, and Jean moved to stay all proceedings until the probate court appointed proper representatives for both Tony's and Tom's estates.[3] In an affidavit attached to the motion to stay, Jean averred that she "previously incorrectly stated that [she] was the executor of [Tom's estate and that she made] those statements in good faith, based on [her] mistaken belief that [she] was the executor of Tom's estate" pursuant to language in Tom's will stating: "I nominate my spouse as my Personal

---

[3] Stacy was substituted as the administrator of her husband's estate on September 26, 2023. See footnote 1, supra.

Representative."[4] A month later, Jean obtained new counsel, and withdrew her motion to stay. On February 13, 2024, the probate court appointed Hinton/the administrator as the temporary administrator for Tom's estate, and on March 4, 2024, the trial court granted the parties consent motion pursuant to OCGA § 9-11-25 (a) ("Substitution of parties") to substitute the administrator as the "Temporary Administrator" of Tom's estate "for Defendant Jean Steusloff as Executor of the Estate of Thomas Steusloff." After the consent order was entered, Jean opposed the entry of final judgment, arguing that no valid judgment could be entered against Tom's estate based on a verdict returned while the estate was unrepresented.

On March 14, 2024, following a hearing where Plaintiffs argued that the judgment should be entered jointly and severally, the trial court entered a final

---

[4] While the probate court named the administrator to represent Tom's estate, and notwithstanding Jean's affidavit, we note that "personal representative" and "executor" are often used interchangeably; indeed, an executor is a personal representative named in a will and an administrator is a personal representative appointed by the court when there is no will or the executor is unwilling or unable to serve. See OCGA §§ 53-1-2 (12), 53-6-10 (a) ("No formal words are necessary for the nomination of an executor. An expression by the testator of a desire that the person carry into effect the testator's wishes shall amount to a nomination as executor."). See also 1 Ga. Wills & Administration § 11:1 (Personal Representative, Generally) (November 2024); Black's Law Dictionary (12th ed. 2024) ("REPRESENTATIVE").

9

judgment on the verdict and award of attorney fees under OCGA § 9-11-68. On April 15, 2024, the administrator filed a motion for new trial or in the alternative to correct the judgment, arguing, inter alia, that Plaintiffs "never substituted a proper party defendant following Tom['s] . . . death[,] and [that] the [c]ourt should vacate and set aside the judgment entered against the [e]state, properly substitute a personal representative of the [e]state, and order a new trial." The motion specifically alleged that the trial court was required to hold a hearing on the substitution of Tom's estate; that the proper party was not substituted; and that the judgment was therefore not binding on the estate.

On December 10, 2024, following a hearing, the trial court denied the administrator's motion for new trial, ruling that a hearing on the substitution of Tom's estate was not required because the administrator had consented to substitution and that because Jean misled the court, equity estops a new trial:

> [D]ue to the actions of the Estate's sole beneficiary [(Jean)], the Estate finds itself in a situation where it is facing a judgment. It is that same beneficiary who took the misleading actions who would be the sole beneficiary [of] a new trial. Such windfalls the law does not allow. . . . To allow such a game would be to impose [an] undue burden on the Plaintiff[s] and the [c]ourt solely for the benefit of giving the Estate,

10

whose alter ego and sole beneficiary is Jean Steusloff, a second bite at the apple. . . . Accordingly, the [c]ourt finds that because [it] effected a substitution of the Estate based on the representations of the Estate's sole beneficiary, the Estate may not now disclaim the judgment, as its interests were fully litigated by attorneys purporting to represent it and representing [the] sole beneficiary. . . . [I]t is . . . clear that where Jean Steusloff and her counsel wrongly led the Plaintiffs and the [c]ourt through litigation and a trial and, *especially* where Jean Steusloff is the sole beneficiary of the Estate, equity must preclude prejudice to the Plaintiff[s] and untoward gain by the Estate and its sole beneficiary.

(Emphasis in original.) On December 23, 2024, the administrator filed a direct appeal from the final judgment and the denial of his motion for new trial.

(b) As set forth above, Plaintiffs contend that the administrator's appeal in Case No. A25A1367 should be dismissed for lack of jurisdiction because the administrator is, in substance, seeking to set aside the judgment based on faulty pleadings and a motion for new trial is not the proper vehicle for challenging pleadings. We disagree.

"Under Georgia law, a litigant cannot use a motion for a new trial to challenge a trial court's legal conclusions; rather, it is a proper vehicle only for challenging factual findings made by either a jury or a judge in a trial-like setting." *Parker v. Robinson*, 337 Ga. App. 362, 363 (1) (787 SE2d 317) (2016) (physical precedent only).

11

So, while Plaintiffs are correct that a litigant cannot use a motion for new trial to challenge a trial court's legal conclusions, and characterize the administrator's motion as one challenging the pleadings, we conclude that the administrator is challenging a factual finding — namely, whether Jean was authorized to represent her late husband's estate during the trial — which is more akin to a motion raising newly discovered evidence. See, e.g., *Goodman v. Lake Buckhorn Estates Homeowners Assn.*, 224 Ga. App. 765, 766 (1) (481 SE2d 882) (1997) (motion for new trial may be used to challenge trial court's factual findings made during hearing to open default); *Berman v. Berman*, 231 Ga. 216 (200 SE2d 870) (1973) (motion for new trial may be available to challenge a trial court's finding of contempt). Compare *Pillow*, 255 Ga. at 684 (motion for new trial was not proper vehicle to review trial court's granting of motion to dismiss for failure to state claim); *Parker*, 337 Ga. App. at 363-364 (1) (motion for new trial was not a proper vehicle to challenge award of attorney fees pursuant to contempt statute in case involving modification of visitation rights). Indeed, in finding that equity applied in this case, the trial court made factual findings regarding Jean's culpability. Accordingly, we have jurisdiction to consider the administrator's timely direct appeal from the denial of his motion for new trial.

12

(c) As to the merits of the appeal, we conclude that the trial court did not abuse its discretion in denying the administrator's motion on the ground that failure to substitute a proper estate representative for Tom renders the judgment against the administrator void. OCGA § 23-1-3 provides that "[e]quity jurisdiction is established and allowed for the protection and relief of parties where, from any peculiar circumstances, the operation of the general rules of law would be deficient in protecting from anticipated wrong or relieving for injuries done." See also OCGA §§ 24-14-26 ("Estoppels"), 24-14-29 ("Equitable estoppel"). "Equitable relief generally is a matter within the sound discretion of the trial court, and an appellate court sustains the trial court's action where such discretion has not been abused." *Barngrover v. City of Columbus*, 292 Ga. 486, 489-490 (1) (739 SE2d 377) (2013).

Without rehashing the details of Jean's averments and actions in this case, including consenting to both motions for substitution and refusing multiple offers from Plaintiffs prior to trial to drop Tom's estate, the trial court did not abuse its discretion in ruling that equity barred a new trial. See *Goode v. Mountain Lake Investments*, 271 Ga. 722, 724 (2) (524 SE2d 229) (1999) ("a trial court has broad discretion to fashion equitable remedies based upon the exigencies of each case"). See

13

also *Hudson v. Hudson*, 258 Ga. 692 (373 SE2d 372) (1988) (trial court had discretion to amend judgment setting aside deed to include a money judgment for the fair market value of the property and did not need to remand case to probate court for determination of the value of the property); *Yurevich v. Williams*, 302 Ga. App. 162, 163 (1) (690 SE2d 476) (2010). Cf. *Thomas v. Harper*, 235 Ga. 92 (218 SE2d 832) (1975) (equitable estoppel applied against appellant/remainder beneficiary who allowed the will creating his estate to remain unprobated while the land was sold by the life tenant posing as the sole heir); *Price v. Ernst & Young*, 274 Ga. App. 172, 174 (1) (617 SE2d 156) (2005) (concluding that trial court correctly applied doctrine of equitable estoppel where appellant made certain assertions multiple times in its complaint).

Additionally, the administrator's claim on appeal that the failure to hold a hearing on the substitution of Tom's estate rendered void the trial court's initial substitution order of Jean as executor is entirely disingenuous given that Jean's substitution was effected pursuant to a consent motion. Relying on *McCarley v. McCarley*, 246 Ga. App. 171 (539 SE2d 871) (2000), the administrator argues that "[a] hearing is required because there may be issues concerning whether the claim has

14

survived or whether the person or persons claiming to be legal representatives actually occupy such status." Id. at 172. But, the statute does not expressly require a hearing under the circumstances here because there was a consent motion; *McCarley* simply implies that a hearing is required where there are issues of confusion as to who is the proper legal representative of an estate. No such issue existed here given the consent of both parties.

2. The administrator contends that the trial court erred in entering judgment jointly and severally despite the jury's apportionment of divisible fault and that even if we reject his claim above, we should vacate and remand with direction to enter a judgment that conforms to the jury's verdict. In response, Plaintiffs contend that Jean and Tom are vicariously liable for the fault of one another (they are concerted actors and joint tenants and obligors, or pursuant to OCGA § 51-2-2, Tom is liable for any "torts committed by his wife"), precluding division of fault as a matter of law, and that the jury's finding of apportionment is not a legal determination; thus we should affirm the judgment.

Paragraph (a) of Georgia's apportionment statute provides:

Where an action is brought against one or more persons for injury to person or property and the plaintiff is to some degree responsible for the

injury or damages claimed, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall determine the percentage of fault of the plaintiff and the judge shall reduce the amount of damages otherwise awarded to the plaintiff in proportion to his or her percentage of fault.

OCGA § 51-12-33 (a). Paragraph (b) provides:

[w]here an action is brought against one or more persons for injury to person or property, the trier of fact, in its determination of the total amount of damages to be awarded, if any, *shall after a reduction of damages pursuant to subsection (a) of this Code section, if any*, apportion its award of damages among the person or persons who are liable according to the percentage of fault of each person. *Damages apportioned by the trier of fact as provided in this Code section shall be the liability of each person against whom they are awarded, shall not be a joint liability among the persons liable*, and shall not be subject to any right of contribution.

(Emphasis supplied.) OCGA § 51-12-33 (b). See generally *Quynn v. Hulsey*, 310 Ga. 473, 475-477 (850 SE2d 725) (2020) (discussing the provisions of the statute); *Fed. Deposit Ins. Corp. v. Loudermilk*, 305 Ga. 558, 572 (2) (826 SE2d 116) (2019) ("When fault is divisible and the other requirements of OCGA § 51-12-33 (b) are met, then the trier of fact 'shall' apportion. If fault is indivisible, then the trier of fact cannot carry out the statute's directive of awarding damages 'according to the percentage of fault

16

of each person' and the apportionment statute does not govern how damages are awarded.") (citation omitted);[5] *KOS Ltd. v. Dockery*, 371 Ga. App. 216, 219-220 (1) (899 SE2d 796) (2024). As the Supreme Court of Georgia has explained:

> The purpose of the apportionment statute is to have the jury consider all of the tortfeasors who may be liable to the plaintiff together, so their respective responsibilities for the harm can be determined. After determination of any fault on the part of the plaintiff which might reduce the plaintiff's reward, OCGA § 51-12-33 (b) provides that the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall after a reduction of damages pursuant to subsection (a) of this Code section [reflecting a plaintiff's responsibility], if any, apportion its award of damages among the persons who are liable according to the percentage of fault of each person.

---

[5] In *Loudermilk*, the Supreme Court of Georgia held that OCGA § 51-12-33 does not abrogate "Georgia's common-law rule imposing joint and several liability on persons who act in concert." 305 Ga. at 569-576 (2) (noting that "OCGA § 51-12-33 … necessarily presumes that fault must be divisible among persons for apportionment to apply") (punctuation omitted). Compare *Quynn*, 310 Ga. 473, 482 (holding that the Respondeat Superior Rule has been abrogated by OCGA § 51-12-33). The common-law theory of *respondeat superior* is codified at OCGA § 51-2-2. See, e.g., *Prodigies Child Care Mgmt. v. Cotton*, 317 Ga. 371, 376-377 (2) (a) (893 SE2d 640) (2023). Accordingly, Plaintiffs' argument that OCGA § 51-2-2 provides another "theory of liability" is without merit.

*Couch v. Red Roof Inns*, 291 Ga. 359, 365 (1) (729 SE2d 378) (2012). See Georgia Law of Torts: Trial Preparation and Practice, § 7:14 (2025 ed.) ("Apportionment of damages") ("Prior to 2005, damages could be apportioned among defendants only when the plaintiff was found to be at fault to some degree. Under the current law, however, damages can be apportioned among defendants as a matter of course as provided in OCGA § 50-12-33.").[6]

Plaintiffs' arguments to the contrary notwithstanding, it is clear from the above cases and the plain language of the statute that the trier of fact, i.e., the jury in this case, was required to determine the percentage of fault of each defendant and then to apportion damages accordingly, which it did. See *KOS*, 371 Ga. App. at 222 (2). Because the jury in this case apportioned 75 percent fault to Tom's estate and 25 percent fault to Jean, to the extent the trial court entered its judgment against "Defendants" jointly and severally, and failed to apportion the damages as set forth

---

[6] We note that Defendants did not make a claim for contributory negligence, and the parties agreed that the trial court would not give any charges on contributory negligence. Additionally, although Plaintiffs objected to including apportionment on the verdict form on grounds that the statute "does not authorize apportionment unless [the jury] find[s] contributory negligence on the part of the plaintiff," the parties ultimately agreed that the verdict form would provide for apportionment and neither side objected to the form of the verdict allowing the jury to assess fault and apportion damages based on its assessment of fault.

in the jury's verdict, it erred. Accordingly, we vacate "the order setting out the judgment, and remand the case with direction that the [trial] court" issue a new judgment consistent with the jury's verdict. *Southern Oil Refinery v. Price*, 372 Ga. App. 427, 431 (2) (903 SE2d 693) (2024) (remanding case with direction that trial court recalculate damages owed by named defendants to include the percentage of fault apportioned to nonparty), disapproved on other grounds, *AU Med. Center v. Dale*, 373 Ga. App. 521, 530 (1) (b), n.15 (908 SE2d 790) (2024).

*Case No. A25A1366*

3. Jean contends that the trial court erred in denying her motion for directed verdict for two reasons. One, there was no evidence the dog had a propensity for viciousness; "[a]t most, the evidence . . . showed that [the dog] was known to jump on guests." Two, the evidence showed that Stacy was a licensee rather than an invitee. These arguments are meritless.

As set forth above, "[a] directed verdict is appropriate only if there is no conflict in the evidence as to any material issue and the evidence introduced, construed most favorably to the party opposing the motion, demands a particular

19

verdict." (Citation and punctuation omitted.) *Ga. Dept. of Corrections v. Couch*, 312 Ga. App. 544, 545 (1) (718 SE2d 875) (2011).

(a) *Vicious propensity.* OCGA § 51-2-7 provides, in pertinent part:

A person who owns or keeps a vicious or dangerous animal of any kind and who, by careless management or by allowing the animal to go at liberty, causes injury to another person who does not provoke the injury by his own act may be liable in damages to the person so injured. In proving vicious propensity, it shall be sufficient to show that the animal was required to be at heel or on a leash by an ordinance of a city, county, or consolidated government, and the said animal was at the time of the occurrence not at heel or on a leash.

Thus, in order to sustain an action for damages in a dog bite case, a plaintiff must prove that the dog was vicious or dangerous and that the owner/keeper knew it. See *Harris*, 373 Ga. App. at 161. See also *Clark v. Joiner*, 242 Ga. App. 421, 422 (530 SE2d 45) (2000). "Our law does not presume[, however,] that dogs are vicious or dangerous. To the contrary, it presumes that dogs, regardless of breed, are of a harmless species, and for that reason, our courts require actual proof of the dangerous nature of a particular dog[.]" (Citations and punctuation omitted.) *Steagald v. Eason*, 300 Ga. 717, 719 (797 SE2d 838) (2017). But, proof of such dangerousness does not

require evidence of identical incidents or injuries. See *Harris*, 373 Ga. App. at 161. See also *Steagald*, 300 Ga. at 720. Rather, a plaintiff must prove "an incident or incidents which would put a prudent person on notice to anticipate the event which occurred." (Citation and punctuation omitted.) *Harris*, 373 Ga. App. at 161.

At trial, Plaintiffs introduced two past incidents involving the dog jumping on people in Jean's presence as evidence of its unprovoked aggressive nature, and in one of the incidents, the dog bit an elderly neighbor. This is the same type of behavior resulting in injury here. Our appellate courts have found similar evidence in other cases sufficient to prove propensity, and we conclude that it was sufficient in this case to support the jury's verdict. See *Torrance v. Brennan*, 209 Ga. App. 65, 67-68 (2) (432 SE2d 658) (1993). Cf. *Steagald*, 300 Ga. at 720-722; *Raith v. Blanchard*, 271 Ga. App. 723, 724-725 (1) (611 SE2d 75) (2005).

(b) *Invitee/licensee*. Jean contends that Stacy was a licensee and not an invitee at the time of the attack because (i) Stacy made the unilateral decision to bring over mail accumulating in her mailbox, and (ii) Stacy invited herself inside Jean's home to see Jean's renovation. "This is important because . . . the duty owed to an invitee

generally is greater than that owed to a licensee." *Stanton v. Griffin*, 361 Ga. App. 205, 206 (1) (863 SE2d 548) (2021). These arguments are without merit.

> The elements of legal liability of the owner or proprietor of premises for injuries occasioned to persons thereon, vary according to whether the person injured was, at the time of the injury, a trespasser, a licensee, a visitor under invitation, express or implied, or a person standing in some special relation recognized by law. The owner or proprietor of premises is liable to a licensee only for wilful or wanton injury. As to an invitee, the owner or proprietor owes the duty to exercise ordinary care.

(Citations and punctuation omitted.) *Frankel v. Antman*, 157 Ga. App. 26, 27 (276 SE2d 87) (1981). See also OCGA §§ 51-3-1, 51-3-2. Determining whether a person is an invitee or licensee

> depends upon the nature of [her] relation or contact with the owner or tenant of the premises. If the relation solely benefits the person injured, [she] is at most a licensee. If, on the other hand, the relation was of mutual interest to the parties, [she] is an invitee. While the mutuality of interest required to render a person an invitee does not necessarily contemplate mutual economic or monetary advantage, the legal status of a mere social guest is, nevertheless, that of a licensee. And the fact that incidental services are performed by the guest during the course of [her] visit does not make [her] an invitee. But if the primary purpose of the

22

visit is to perform services for the host or services mutually beneficial to host and guest, the legal status of the visitor is that of an invitee.

(Citation and punctuation omitted.) *Stanton*, 361 Ga. App. at 207 (1).

(i) Here, Stacy's entry onto Defendants' property was for a mutually beneficial purpose. Indeed, Stacy testified at trial that Defendants' mail "had some pretty important-looking [envelopes, including] something from the Treasury Department . . . [a]nd . . . it didn't seem to be things that I should just leave sitting around [on the front porch]." See *Burkhead v. American Legion Post No. 51*, 175 Ga. App. 56, 57 (332 SE2d 311) (1985) (where appellant's presence on appellee's premises was of mutual benefit to the parties, appellant was an invitee at the time of his injury). Accordingly, the trial court did not err in denying Defendants' motion for directed verdict on the ground that the evidence showed that Stacy was a licensee rather than an invitee

Regardless, "[w]hen there is conflicting evidence as to the legal status of the injured party, the question is rightfully left to the jury." *Couch*, 312 Ga. App. at 546 (1) (a). As in *Couch*, here the trial court charged the jury on the law of duties owed to invitees, licensees, and trespassers, and the evidence presented at trial supported a finding that Stacy was an invitee at the time she was attacked and injured. Id.

Accordingly, Jean's argument that Stacy was a licensee because she made the unilateral decision to bring over Jean's mail is without merit.[7]

(ii) Because it is up to the jury to resolve conflicts in the evidence and Stacy's legal status, see *Cham v. ECI Mgmt.*, 353 Ga. App. 162, 166 (1) (a) (836 SE2d 555) (2019), there is likewise no merit in Jean's claim that Stacy was a licensee because she invited herself inside Jean's home. Jean claims in her brief that the only evidence in the record is that Stacy asked to go inside Jean's home to see the home's floorplan.

---

[7] Jean contends in her reply brief that an invitee is "someone with existing 'business relations with' the property owner" and that Stacy could not be an invitee because she did not enter Defendants' property for any business purpose or to further any common interest. But, as held supra, it was up to the jury to determine if Stacy entered the property to further a common interest. Moreover, as this Court has held,

> [t]he mutuality of interest required to make one an invitee upon the premises of another does not mean that there must be a commercial business transaction between the parties. It is sufficient to show that each party is moved by a lawful purpose or interest in the object and subject matter of the invitation. The visitor is an invitee if the enterprise is mutual, each lawfully interested therein or there being a common interest or mutual advantage involved. A monetary consideration is not essential.

(Citation and punctuation omitted.) *Esposito v. Pharr Court Assoc.*, 334 Ga. App. 434, 437 (1) (779 SE2d 675) (2015).

24

But, this is simply not true as the animal control officer testified that both Jean and Stacy told the same story, i.e., that Jean invited Stacy into the home to see the master bedroom. See *Jones v. Barrow*, 304 Ga. App. 337, 338 (1) (696 SE2d 363) (2010) ("[a]n invitee is a person who, by express or implied invitation, has been induced or led to come upon premises for any lawful purpose while a licensee is one who is permitted, either expressly or impliedly, to go on the premises of another, but merely for his own interest, convenience, or gratification").

4. Jean contends that she is entitled to a new trial because the trial court erred in admitting testimony by the dog's treating veterinarian "opin[ing]" that pit bulls were originally bred as fighting dogs and speculating about how the dog may have behaved during treatment at his previous vet in North Carolina based on the records obtained from the previous vet by the treating vet for purposes of continuity of treatment. Jean contends the treating vet's testimony was substantively inadmissible and that Plaintiffs failed to disclose the treating vet as an expert witness in violation

of OCGA § 9-11-26 (b) (4) (A) (i).[8] She also argues that whether pit bulls were historically bred to fight is not relevant to Plaintiffs' claims.

"We review a trial court's admission of evidence for abuse of discretion." *City of Milton v. Chang*, 373 Ga. App. 667, 676-677 (2) (906 SE2d 784) (2024). To constitute reversible error, however, it is not enough for the appellant to show that the trial court erred; the appellant

> also must show that the error had an effect on the outcome of the proceedings. Erroneous evidentiary rulings are subject to the harmless error doctrine, meaning we may not reverse a judgment because of such an error unless refusal to take such action appears to the court inconsistent with substantial justice. When we consider whether an error was harmless, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so.

---

[8] This subsection provides, in pertinent part, that one party may ask another through interrogatories "to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." OCGA § 9-11-26 (b) (4) (A) (i).

(Citation and punctuation omitted.) Id. See also OCGA § 24-1-103 (a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"). Jean's claim in this regard fails for several reasons.

One, Jean failed to object to the treating vet's testimony based on relevancy grounds;[9] Jean only objected on grounds that the treating vet was offering expert opinion and that his testimony was speculative.

> To preserve a ground for error, the objecting party must state the specific ground upon which the objection is based. The trial court must have the opportunity to be fully informed of the error and to rule on it. When the specific ground of objection is not made at the time the evidence is offered, the failure to do so amounts to a waiver of that specific ground. Objections made at trial cannot be modified or expanded for the first time on appeal.

(Citation and punctuation omitted.) *Thomas v. Alligood*, 358 Ga. App. 703, 711 (2) (a) (856 SE2d 80) (2021). Because Jean failed to object below on relevancy grounds, she has waived the issue in this Court. Our analysis does not end here, however, because

---

[9] Jean does not point out in her brief where she objected to the treating vet's testimony on the grounds of relevancy, though our review of the record reveals that she objected to the prior vet's *records* on relevancy grounds during the motion in limine hearing. See footnote 2, supra.

the plain-error provision of the Evidence Code "establishes that nothing in [OCGA § 24-1-103] shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court." (Citation and punctuation omitted.) *Chrysler Group v. Walden*, 303 Ga. 358, 369 (II) (B) (812 SE2d 244) (2018).

> In order to demonstrate plain error based upon the admission of evidence,
>
> an appellant must show an error or defect that has not been "affirmatively waived" by the appellant, that is "clear or obvious," and that "affected the appellant's substantial rights" by "affect[ing] the outcome of the trial court proceedings"; if these three requirements are satisfied, we have the discretion to remedy the error but should do so only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."

(Citation omitted.) *Chrysler Group*, 303 Ga. at 370 (II) (B). In *Chrysler*, Justice Grant, joined by three other Justices, wrote that "the context of civil litigation often differs from the context of criminal prosecution; actual application of the plain-error standard takes account of the differences." (Citation and punctuation omitted.) Id. at 369 (II) (B), n.4. Although the opinion "decline[d] to establish a specific boundary," it advised that "because civil cases do not ordinarily invoke the violation of a

28

constitutional right or the denial of liberty it is far less likely that plain error will be identified in the civil context." Id.

In this case, even if we assume, without deciding that the vet's testimony was inadmissible, we cannot say that its admission "affected the appellant's substantial rights by affecting the outcome of the trial court proceedings." (Citation and punctuation omitted.) *Chrysler Group*, 303 Ga. at 370 (II) (B). The vet did not testify that the dog at issue was bred as a fighting dog. Additionally, that the dog had injured others was confirmed by evidence presented at trial, including Jean's statement to the Hall County Animal Control officers. Accordingly, we cannot say that the vet's testimony "affect[ed] the outcome of the trial court proceedings."

Finally, pretermitting whether the trial court abused its discretion in admitting the treating vet's testimony on the ground that it was improper expert testimony, we conclude that any such error was harmless and thus does not merit reversal or a new trial. The facts about which the treating vet testified to, such as that the previous vet "[d]iscussed training methods for dog growling at us during exam and avoid letting it escalate," recommended that the dog be exposed "to other people in a safe way to decrease fear and anxiety," and muzzled the dog during exams, were noted on the

prior veterinary records which were admitted at trial without objection.[10] Where

challenged testimony is cumulative of other evidence admitted without objection, any

error in its admission is harmless. See *Fassnacht v. Moler*, 358 Ga. App. 463, 475-476

(2) (855 SE2d 692) (2021).

5. Jean contends that the trial court erred in charging the jury that it could hold

her "strictly liable under two irrelevant local ordinances."[11] Jean specifically

---

[10] Although Jean objected to admission of the prior vet records in her motion in limine, we are unable to locate — and Jean does not point out — where in the record the trial court made a definitive ruling on any challenge to those records.

[11] The trial court charged the jury as follows:

> In Hall County there exists an ordinance providing that it is unlawful for anyone having a domesticated animal in his possession or control to permit such domesticated animal to be at large and not under restraint. The ordinance defines an animal at large to mean one that is not under restraint.

> An animal is considered under restraint if it is controlled within the property limits of the owner by a visible physical barrier that the animal cannot climb, dig, or otherwise escape from on its own volition that is securely locked by key or combination lock at any time the animal is left unattended or by a metal chain or metal cable of sufficient strength the restrain the animal.

challenges the charge on the ground that (a) the ordinances were irrelevant because the dog was not "at large" at the time of the incident and (b) the trial court ignored or misstated certain portions of the ordinances. But, Jean has failed to preserve this

You may find that the animal was vicious per se by finding that the animal was required to be at heel or on a leash by a local ordinance and was not kept under such restraint at the time of the injury to the plaintiffs.

Further, you may find that the keeper had the requisite knowledge by finding that the keeper knew the animal was held in conditions that did not comply with the applicable government ordinance requiring the animal to be at heel or on a leash.

The plaintiffs satisfied their burden of proof by proving either that the subject animal was vicious or dangerous and that defendant had knowledge that there was at least one incident that would cause a prudent person under the same or similar circumstances to anticipate the actual incident that caused the injury or by proving that the subject animal was required to be at heel or on a leash by a local ordinance, that the animal was not restrained according to the ordinance, and that the keeper knew of the conditions in which the animal was being kept. Plaintiffs need not prove both in order to meet their burden of proof. There is no requirement that the defendant knew the requirements or existence of the ordinance.

31

error for appellate review. OCGA § 5-5-24 (a) provides, in pertinent part, that "no party may complain of the giving or the failure to give an instruction to the jury unless he objects thereto before the jury returns its verdict, stating distinctly the matter to which he objects and the grounds of his objection." See *Tucker Nursing Center v. Mosby*, 303 Ga. App. 80, 87 (5) (692 SE2d 727) (2010) ("objections to charges must be made after the jury is charged and before the verdict") (citation and punctuation omitted). In this case, Jean does not point out where in the record she distinctly challenged this instruction and we have been unable to find that any such challenge was made either during the charge conference or before the jury returned its verdict.[12] Jean's failure to object constitutes a waiver unless "the court made a substantial error in the charge which was harmful as a matter of law." *Thomas v. Accurate Steel Rule Cutting Die*, 375 Ga. App. 457, 466 (3) (916 SE2d 510) (2025), citing OCGA § 5-5-24 (c). "Instances falling within the exception contemplated in subsection (c) are very rare, [such as when a party has been denied a fair trial,] . . . and the subsection must be strictly construed so as to avoid emasculation of the provisions of subsections (a) and (b)." (Citations and punctuation omitted.) *Nelson v. Miller*, 169 Ga. App. 403, 405

---

[12] Jean only objected to "the ordinance going out [with the jury during deliberations]."

32

(312 SE2d 867) (1984). Because Jean cannot show that the jury based its verdict in favor of Plaintiffs on violation of the ordinance to prove "vicious propensity," we find no merit in this enumeration. See id. (where "[t]he record disclose[d] no evidence that the jury's verdict in favor of appellee was based on the accident theory rather than a theory of comparative negligence," this Court declined to reverse). See also *S&S Towing & Recovery v. Charnota,* 309 Ga. 117, 122 (3) (844 SE2d 730) (2020) (noting that "the second sentence [of OCGA § 51-2-7] simply creates an additional way to prove viciousness," thus implying that a plaintiff can also prove vicious propensity by showing prior instances of specific vicious conduct).[13]

---

[13] Although Jean has not asserted plain error, we nonetheless conclude that the trial court did not commit plain err in its charge. See OCGA § 17-8-58 (b). See generally, *State v. Kelly*, 290 Ga. 29, 32 (1) (718 SE2d 232) (2011) (holding that under OCGA § 17-8-58 (b), "appellate review for plain error is required whenever an appealing party properly asserts an error in jury instructions," a "construction that is consistent with the plain language of the statute" and "consonant with the analogous statutory provision applying to civil cases," OCGA § 5-5-24 (c)). Based on our review of the record and the circumstances of this case, we find that the error, if any, did not affect the outcome of the proceedings, nor did it "seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings" as required to show plain error. See generally, *Armstrong v. State*, 310 Ga. 598, 606 (4) (852 SE2d 824) (2020); *White v. Stanley*, 369 Ga. App. 330, 331, n.4, 338-339 (2) (893 SE2d 466) (2023).

As for Jean's claim that she "is entitled to a new trial because of the cumulative effect of the trial court's errors," pretermitting whether cumulative error applies in civil cases, it applies only to errors in the evidentiary context, see *State v. Lane*, 308

6. Like the administrator, Jean contends that the trial court erred in entering the verdict jointly and severally. For the same reasons discussed in Division 2, supra, we agree, and accordingly vacate the order setting out the judgment, and remand the case with direction that the trial court issue a new judgment consistent with the jury's verdict.

7. Jean contends that the trial court erred in awarding attorney fees under OCGA § 9-11-68, the offer of settlement statute. In support of this contention, Jean claims that (a) the jury apportioned only 25 percent of the damages to her, amounting to $1,417,540 in damages, a recovery of only 1.2 percent more than Plaintiffs' offer to settle the case for $1,400,000;[14] (b) the judgment entered against Tom's estate is void; and (c) Plaintiffs' settlement offer was ambiguous and unenforceable because it did not specify that "it [was] made to settle a tort claim for the money specified in the offer [of settlement] and to enter into an agreement dismissing the claim *or* to allow

---

Ga. 10, 17 (1) (838 SE2d 808) (2020), and Jean has asserted only one evidentiary error. Accordingly, this claim fails on its face.

[14] Pursuant to OCGA § 9-11-68 (b) (2), a plaintiff is entitled to recover reasonable attorney fees and expenses of litigation incurred if the plaintiff recovers a final judgment exceeding 125 percent of an offer of settlement.

judgment to be entered accordingly."[15] (Emphasis in original.) There is no merit in the latter two arguments. As detailed in Division 1, supra, the judgment entered against Tom's estate is not void. As for Jean's claim that the settlement offer was not enforceable because it did not specify whether Plaintiffs were asking Defendants to allow the trial court to enter a judgment against them, this argument is disingenuous. Subsection (a) of OCGA § 9-11-68 provides, in part, that "either party may serve upon the other party, but shall not file with the court, a written offer, denominated as an offer under this Code section, to settle a tort claim for the money specified in the offer and to enter into an agreement dismissing the claim or to allow judgment to be entered accordingly." It then lays out eight requirements that *must* be met for an offer

---

[15] Jean also contends that the award (Plaintiffs' counsel's entire 40 percent contingency fee) is unreasonable, but makes no meaningful argument as to this claim besides citing the statute and a case holding that plaintiffs are only entitled to recover reasonable fees. See *Couch*, 295 Ga. 469 at 485 (3) (b). Jean does not explain how or why the fee award is unreasonable and we will not attempt to make the argument for her. "[A] mere reference to a case citation to support a conclusory allegation is not the type of meaningful argument contemplated by our rules." (Citation and punctuation omitted.) *Willis v. Cheeley*, 363 Ga. App. 341, 344 (1), n.4 (870 SE2d 907) (2022). See also *Lundy v. Hancock County*, 368 Ga. App. 772, 781 (9) (a) (890 SE2d 92) (2023) ("[i]t is not this court's role to speculate about the legal basis for an appellant's argument, and mere conclusory statements are not the type of meaningful argument contemplated by our rules") (citation and punctuation omitted). Accordingly, Jean has abandoned any claim that the fee award is unreasonable.

to be enforceable, including that the offer be in writing and state that it is being made pursuant to the Code section; the total amount of the proposal; any relevant conditions stated with particularity; and the parties. See OCGA § 9-11-68 (a) (1), (2), (4), (5). The statute does not require that an offer *state both disposition options* (dismissal of the claim or entry of judgment). Here, the offer provided that Plaintiffs would dismiss the action with prejudice, and Jean does not challenge any of the eight elements for a valid offer.

As for Jean's claim that the trial court erred in awarding fees under the statute because the jury apportioned only 25 percent of the damages to her (amounting to only 1.2 percent more than Plaintiffs' offer to settle the case), given that the trial court presumably based the award of fees on a judgment that was entered jointly and severally, it did not address the viability of this claim, which Jean raised below in response to Plaintiffs' motion for fees. Accordingly, we vacate the grant of Plaintiffs' motion for fees pursuant to OCGA § 9-11-68 and remand the case for reconsideration of that motion in light of our ruling that the trial court erred in entering the judgment jointly and severally. See, e.g., *Lyons v. Lyons*, 244 Ga. 619 (261 SE2d 395) (1979) (reversing judgment awarding husband exclusive possession and title of property and

36

remanding to reconsider issue of attorney fees in favor of wife); *Price*, 372 Ga. App. at 431 (2), n.5 (noting that attorney fee award under OCGA § 13-6-11 is subject to apportionment under OCGA § 51-12-33); *Gibson-Wright v. Smith*, 370 Ga. App. 860, 866 (2) (b) (896 SE2d 907) (2024) (vacating trial court's denial of appellant's claim for attorney fees under OCGA § 9-15-14, and remanding the issue for reconsideration in light of determination that the trial court erred in granting appellee a protective order).

8. Jean contends that the trial court erred in ordering her to post a $2,500,000 supersedeas bond pursuant to OCGA § 5-6-46 because she affirmed that she was unable to post a bond and a bankruptcy order precluded Plaintiffs from collecting on the judgment. Jean contends that "[t]his was . . . error, though this Court need not reach the issue." As an initial matter, Jean's brief on this issue is entirely lacking as it makes no real argument and provides no legal authority in support. See Court of Appeals Rule 25 (a) (7) (requiring that an appellant "cite the authorities relied on and include a concise statement of the applicable standard(s) of review"), (d) (1) ("[a]ny enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned"). See also *Guilford v. Marriott Intl.*, 296 Ga.

App. 503, 505 (675 SE2d 247) (2009) (deeming abandoned enumerations of error that were not supported by legal authority; legal argument "requires, at a minimum, a discussion of the appropriate law as applied to the relevant facts") (citation and punctuation omitted).

Even if not abandoned, however, this enumeration is meritless. As Plaintiffs correctly point out, Jean's OCGA § 5-6-47 "pauper's affidavit" stated that she has assets totaling $3,500,000. As for any bankruptcy order, while an automatic stay in bankruptcy court may prevent the enforcement or execution of a judgment,[16] Jean does not cite any authority for the proposition that it prevents the trial court from requiring the posting of a bond.

9. Finally, during oral argument, Plaintiffs' counsel argued that the fairest outcome in this case is for this Court to rule that the estate was never opened; that no judgment was ever entered against it; that this was a one defendant case at the time of trial and, therefore, apportionment is not allowed; and that we affirm the judgment and simply order the trial court to enter a final judgment against Jean alone.

[16] See, e.g., *NationsBank of Ga. v. Shaheen and Co.*, 264 Ga. 533, 534 (1) (448 SE2d 688) (1994) ("filing of a bankruptcy petition operates as a stay of any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate").

Pretermitting that Plaintiffs neither raised this argument below nor filed a cross-appeal raising it, to furnish such relief would usurp the functions of both the jury and the trial court, which we decline to do. See, e.g., *McRae v. Adams*, 36 Ga. 442, 443-444 (1867 WL 1523) (1867) (stating that the appellate courts have "no power to review the action of the jury" and must "confine [themselves] to the correction of errors in law and equity from the Courts below [and] avoid usurping the powers which properly belong to those Courts").

In sum, we vacate the trial court's order setting out the final judgment and granting Plaintiffs' motion for fees pursuant to OCGA § 9-11-68, and remand the case with direction that the trial court issue a new final judgment consistent with the jury's verdict apportioning damages and reconsider Plaintiffs' motion for fees in light of our ruling that the trial court erred in entering the judgment jointly and severally.

*Judgment affirmed in part and vacated in part, and case remanded with direction. Barnes, P. J., and Watkins, J., concur.*